STATE v. CHARLIE DUNN.

(Filed 26 June, 1935.)

1. **Obstructing Justice B c—Evidence held sufficient for jury on issue of defendant's suppression of evidence of son's guilt of manslaughter.**

    Evidence that defendant's son, driving defendant's car at night, presumably with defendant's consent, drove recklessly and unlawfully, and struck and killed a pedestrian on the highway, that the occupants of the car fled the scene of the accident, that defendant was informed of the accident and immediately drove the car with its occupants in a roundabout way from the place where he was visiting to his home in another town, and that before daylight he was driving his car from his home to a city some hundred miles distant to have the car repaired, and all telltale marks removed therefrom, *is held* sufficient to be submitted to the jury on the issue of defendant's guilt of aiding and abetting his son in avoiding arrest and in undertaking to conceal the crime, although defendant testified that he did not know that a man had been struck or killed, and that he was taking the car to the city for repairs because he understood there were expert mechanics there, since more than one inference can be drawn from the evidence.

2. **Criminal Law D b—**

    A motion to quash the indictment upon the trial in the Superior Court for that the crime charged was a misdemeanor, and that the recorder's court had exclusive jurisdiction, is properly refused where the record does not show that there was a recorder's court for the county, or that such court had exclusive jurisdiction of misdemeanors.

3. **Criminal Law C d: Homicide A c—Involuntary manslaughter is a felony and not a misdemeanor.**

    The amendment to N. C. Code, 4201, by ch. 249, Public Laws of 1933, which added a proviso that in cases of involuntary manslaughter the defendant shall be punishable by fine or imprisonment, or both, in the discretion of the court, does not constitute involuntary manslaughter a misdemeanor instead of a felony, the effect of the proviso being to mitigate punishment in cases of involuntary manslaughter, and not to set up involuntary manslaughter as a separate offense.

CRIMINAL ACTION, before *Clement, J.,* at October Term, 1934, of RICHMOND.

Clarence Dunn, a son of the defendant, while using the defendant's car, struck and killed a person, and thereafter the defendant was indicted as an accessory after the fact for "aiding, assisting, procuring, and counseling the said Clarence Dunn to flee from the scene of said felony, and did aid, assist, counsel, and abet the said Clarence Dunn in evading arrest and apprehension upon said charge of said felony, with the intent thereby to obstruct, hinder, and delay the administration of justice," etc. The evidence tended to show that on the night of 30

November, 1933, Clarence Dunn, while driving his father's car, unlawfully and recklessly struck and killed J. T. Smith on a public highway. The defendant was not in the car at the time of the killing, but immediately thereafter Clarence Dunn returned to the house where the other members of his family were visiting and informed his father that "he had struck some man." In addition, he pointed out to his father the damage done to the car. The father then got into the car and drove back home about two o'clock in the morning. About daylight on the same morning the father took the car to Durham to have it repaired. The father contended that he did not know that any person had been killed by his son, and that he took the car to Durham to be repaired because he had information that there were expert mechanics at that point.

The charge of the court is not in the record, and hence it is assumed that correct instructions were given upon all phases of the case. There was a verdict of guilty, and from judgment sentencing the defendant to work on the roads for a term of six months, he appealed.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Fred W. Bynum for Charlie Dunn.*

BROGDEN, J. The questions of law presented are:

1. Was there any competent evidence that the defendant aided and abetted his son in avoiding arrest, or that he undertook to conceal the crime?

2. Is the crime of involuntary manslaughter, as contained in the proviso to C. S., 4201, of the 1933 supplement to the North Carolina Code of 1931, a misdemeanor or a felony?

Upon the first proposition there was evidence tending to show that the son, using the father's car in the nighttime, presumably with the father's consent, recklessly and unlawfully ran over and killed the deceased on a public highway. The occupants of the car made no attempt to render aid, but fled from the scene. Immediately they returned to the place where the father was visiting and informed him that a man had been hit in the road. The father got into the car with his son and his companions and drove to his home at Raeford. There is evidence tending to support the inference that he drove to his home in a round-about way. Before daylight the father is on his way to Durham, a point about one hundred miles distant from where he lived, to have his car repaired and to remove therefrom the tell-tale dents and damage thereto.

Obviously a jury would have been warranted in finding, if they believed the father's admission to the sheriff, that he did not know a man had been killed or seriously injured; but, upon the other hand, more than one inference could have been drawn from the evidence, and the jury was warranted in drawing the inference that the father was seeking to cover up the crime by removing the evidence of the collision. Therefore, the trial judge properly submitted the question to the jury.

The second question of law involves the amendment to C. S., 4201, of the Code of 1931. Said section, before the enactment of chapter 249 of the Laws of 1933, read as follows: "If any person shall commit the crime of manslaughter he shall be punished by imprisonment in the county jail or State Prison for not less than four months nor more than twenty years." Thereafter, on 10 April, 1933, the General Assembly enacted chapter 249, Public Laws of 1933, in the following words: "Section 1. That section 4201 of Consolidated Statutes be and the same is hereby amended by adding a sentence to said section as follows: *'Provided, however,* that in cases of involuntary manslaughter, punishment shall be in the discretion of the court, and the defendant may be fined or imprisoned, or both.' " The defendant contends that the proviso added by the Legislature was designed to make involuntary manslaughter a misdemeanor instead of a felony, and that, therefore, the recorder's court of Richmond County had jurisdiction, and hence no indictment could lie in the Superior Court. This contention, however, cannot be maintained for two reasons: First, it does not appear from the record that there is any recorder's court in Richmond County, or that such court had exclusive jurisdiction of misdemeanors. Second, the proviso did not purport to create a new crime, to wit, that of involuntary manslaughter. Chapter 249 states in plain English that it is designed as an amendment to C. S., 4201. Discussing the function of a proviso in *Supply Co. v. Eastern Star Home,* 163 N. C., 513, 79 S. E., 964, the Court declared: "It has long been held that if a proviso in a statute be directly contrary to the purview of the statute, the proviso is good and not the purview, because the proviso speaks the later intention of the Legislature." It is not thought that by enacting the proviso the Legislature intended to repeal the manslaughter statute and to set up in its stead involuntary manslaughter as a misdemeanor. Indeed, the Court is of the opinion, and so holds, that the proviso was intended and designed to mitigate the punishment in cases of involuntary manslaughter, and to commit such punishment to the sound discretion of the trial judge.

No error.