Spiers *v.* State

No. 40489 May 6, 1957 94 So. 2d 803

*Henry Mounger, Ernest R. Duff, Hammond & Pope, Roy J. Goss,* Columbia, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

HOLMES, J.

The appellant, Jack Spiers, was convicted in the Circuit Court of Marion County on a charge of constructive contempt of court. He was sentenced to pay a fine of $100 and costs and to serve a term of thirty days in jail,

the jail term being suspended until July 1, 1957. He appeals from the judgment of conviction.

The appellant assigns as error the following: (1) The court erred in finding the appellant guilty upon evidence that was wholly insufficient to constitute proof beyond a reasonable doubt, and (2) the court erred in rendering a judgment against the appellant based on and resulting from bias, prejudice, passion and prejudgment.

It is conceded that if the appellant is guilty of the acts charged against him, the same constitute constructive contempt of court, and this Court has, under a similar state of facts, just recently so held in the case of Young v. State, 93 So. 2d 452, decided March 11, 1957. It is conceded, too, that the offense of constructive contempt of court is criminal in nature and that the burden of proof rests upon the state to establish the guilt of the accused beyond a reasonable doubt.

We are accordingly confronted on this appeal with the question whether there was sufficient evidence to warrant the circuit judge in finding that the guilt of the appellant was established beyond a reasonable doubt, or whether the evidence was insufficient to support the finding of the circuit judge and his decision resulted from bias, prejudice, passion and prejudgment of the case.

The charge against the appellant arose in connection with the case of State of Mississippi v. Millard Taylor, who was charged by indictment with the murder of Bob Hathorne. The Taylor case was docketed for trial at the November 1956 term of circuit court of Marion County, and a special venire had been drawn for the trial of the cause. One John Lloyd Day was summoned as a member of the special venire and was a prospective juror in the case. It was charged in the information filed against the appellant that while the Taylor case was pending and while the court was sitting and in session, the appellant, knowing that Day was a member of the special venire, approached him and offered him $100 if

he would qualify as a member of the jury to try Taylor and vote for his acquittal. On the basis of this charge an information was filed against the appellant praying that he be cited to appear before the judge of the Circuit Court of Marion County to show cause why he should not be adjudged in constructive contempt of court. The appellant filed a written answer to the charges preferred against him in the information wholly denying the charges. His trial resulted as above stated.

The proof introduced by the State consisted of the testimony of one witness, namely, John Lloyd Day. Day testified that he was 37 years of age and was married and had four children; that he lived in Marion County about three miles southeast of Hub; that he was a deacon in the church and a Sunday School superintendent; that he knew the appellant by sight but that they were not friends and that neither had visited the other in their respective homes; that he had been summoned as a member of the special venire in the Millard Taylor case; that on Sunday afternoon, December 2, 1956, at about 5:30 o'clock, the appellant came to his home and stopped his car in front of his house; that his daughter or his kids or his wife told him there was someone out front who wanted to see him; that he went out and met the appellant and that they sat in the appellant's car and talked awhile, and that the appellant told him that he knew he had been summoned on the jury in the Taylor case and that he then proposed to him that if he would qualify on the jury and vote to acquit Taylor he would pay him $100 in cash after the trial, and that it would be sent to him and he would not have to come for it; that he told his wife and his father about the incident but did not otherwise disclose it until he was required to do so when he was testifying under oath on being examined as to his qualifications as a prospective juror in the Taylor case; that upon such examination he was asked if he had been approached about the case by anyone since he was summoned as a

member of the special venire, and that he then had to relate what had happened or lie about it; that he was then asked if what had happened would have any bearing upon his decision in the case, and he said it would as the attempt to bribe him had set him against Taylor; that he was then excused from jury service.

The proof introduced on behalf of the appellant consisted of the testimony of the appellant, his wife, Mrs. Jack Spiers, his son-in-law, Lewis Holmes, Jimmy Harriell, who worked for a lessee of the land owned by the appellant, and Abb Turnage, who was the father-in-law of the said Jimmy Harriell, and also worked on land owned by the appellant. The appellant, testifying in his own behalf, wholly denied the charges preferred against him. He testified that he returned to his home on the Sunday in question at about three o'clock in the afternoon and remained there until the next morning; that he had a paved driveway into his premises which enabled him to drive his car and park the same opposite his kitchen door in order that he might the more easily get in and out of his car; that he was crippled, being paralyzed from his waist down; that he parked his car in the usual place on the Sunday afternoon in question and that it there remained until the next morning. He further testified that he did not know John Lloyd Day and had never had any trouble with him, and that he was unable to assign any reason why the said Day should falsely accuse him.

Mrs. Spiers, the wife of the appellant, corroborated the testimony of her husband. She said that he had returned to his home on the Sunday afternoon in question at about three o'clock and had parked his car in his usual place and that he remained at home until about seven o'-clock the next morning; that nobody came to the home to see him except his son-in-law, Lewis Holmes, who came there about five o'clock on the Sunday afternoon in ques-

tion, accompanied by his six children, and remained there until about eight o'clock. The appellant's son-in-law, Lewis Holmes, testified that on the Sunday afternoon in question he drove his wife to the church and there left her and came to the home of the appellant, reaching there about five o'clock P.M.; that he was accompanied by his six children, that he and the appellant sat talking in the living room; that he and his children had supper at the appellant's home; that the appellant did not leave the home while he was there. Jimmy Harriell testified that he lives on the appellant's place and is employed by one Bill Cowart; that he is engaged in the business of raising chickens; that his house is very close to the appellant's house; that he saw the appellant's car on the Sunday afternoon in question at about three o'clock parked in its usual place in the driveway near the kitchen door; that the car was still there until about eight o'clock; that he saw the appellant's son-in-law come to the house about five o'clock in the afternoon and that he did not leave the house until about eight o'clock P.M.; that he is the son-in-law of Abb Turnage who is also employed as a caretaker on land belonging to the appellant. Abb Turnage testified that he is employed as a caretaker on land belonging to the appellant and lives about 125 yards from the appellant's house; that on the day in question he saw the appellant's car in its usual parking place at about three o'clock in the afternoon; that he did not see Lewis Holmes arrive but saw his car at the appellant's house a little before sundown; that he saw no other cars come and go from appellant's house between three o'clock and eight o'clock; that he does not remember seeing the appellant on the day in question but that he did see his car in its usual place in the driveway about five o'clock in the afternoon.

 █ It is at once apparent that the evidence was conflicting and presented an issue of fact for the deter-

mination of the circuit judge. The judge resolved this issue against the appellant, and we are of the opinion that he was amply warranted by the evidence in doing so. The appellant lays emphasis upon the fact that the State's case rests upon the testimony of only one witness, namely, John Lloyd Day, whereas five witnesses, including the appellant, testified in the appellant's behalf. ▮▮▮ It is recognized in all jurisdictions, however, that the strength or weakness of testimony is not measured by the number of witnesses appearing for the respective sides of law suits. In the case of Henderson v. State, 187 Miss. 166, 192 So. 495, this Court said:

"The testimony of a single witness whose testimony is not unreasonable on its face and whose credibility is not successfully impeached will sustain a conviction although there may be more than one witness testifying in opposition to such witness."

▮▮▮ We think that the trial judge was warranted in accepting as reasonable and true the testimony of the witness Day. Although contradicted by the appellant and the appellant's witnesses, the veracity and credibility of the witness Day is not otherwise assailed. Further, the proof is devoid of any showing of animosity or ill will on the part of the witness Day against the appellant, and of any showing of a motive on the part of Day to falsely accuse the appellant. On the contrary, the evidence shows that Day knew the appellant by sight only and had never had any trouble with him and the appellant himself was unable to offer any reason why the appellant should falsely accuse him. It is significant too that Day told only his wife and father about the incident and did not otherwise disclose it until he was required to do so when he was testifying under oath in response to questions propounded to him upon his examination as to his qualifications as a juror in the Taylor case. So far as the record discloses Day was a wholly disinterested witness.

The credibility of the witnesses was a matter for the trial judge. The judge was warranted in taking into consideration the interest of the witnesses and their relationship to the appellant. He had the opportunity to see the witnesses as they testified and to observe their demeanor on the stand and their manner of testifying, and he was in a more advantageous position to detemine the cedibility of the witnesses and the factual issues in the case than a reviewing court. Deference must therefore be given to the findings of the trial judge. ▮ ▮ One eminent jurist has appropriately said:

"The courts are fond of saying that deference should be given to the trial Chancellor. He sees and hears much, that the appellate court cannot see and hear. We well know there are things of pith that cannot be preserved in or shown by the written page. Truth does not always stalk boldly forth naked but modest withal, in a printed abstract in a court of last resort. She oft hides in nooks and crannies visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or sneering tone, the heat, the calmness, the yawn, the sign, the candor or lack of it, the scant or full realization of the solemnity of an oath, the carriage and mien. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson, or the itching over-eagerness of the swift witness, as well as the honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi believed a word of it; and another witness may understand that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. Therefore, where an issue in equity rests on the credibility of witnesses, the upper court may with entire propriety rest somewhat on the

superior advantage of the lower court in determining a fact.''

After a careful consideration of the evidence, we have reached the conclusion that it is sufficient to support the finding and decision of the circuit judge.

■■■ It is contended by the appellant, however, that the circuit judge's decision was influenced by bias, prejudice, passion and prejudgment. He bases this contention upon the remarks made by the circuit judge in rendering his decision. The judge in rendering his decision mentioned his long experience as a district attorney and as a circuit judge. He referred to his wide acquaintance with the people of Marion County, the county of his birth, and his familiarity with and knowledge of conditions in the county, and the enforcement of the law and the administration of justice in the county. He stated that he had asked Divine guidance in order that he might reach a right and just decision in this case. We have carefully read the statement of the circuit judge and we are unable to find in it any manifestation of bias, prejudice and passion against the appellant, or prejudgment of the appellant's case. It may be conceded that the judge's remarks evince a zeal for the maintenance of law and order and for the proper enforcement of the law and for the preservation unsullied of the administration of justice. We cannot, however, under the facts of this case, translate this laudable zeal into bias, prejudice and passion against the appellant, or construe it as a prejudgment of the appellant's case.

Viewing the case as a whole, we are of the opinion that the circuit judge's decision is amply supported by competent and credible evidence. It follows that the judgment of the court below should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.