People of the State of Illinois, Defendant in Error,
v. Milton Clemmon, Plaintiff in Error.

Gen. No. 49,521.

First District, Third Division.

June 25, 1964.

Martin Smith, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

On a trial by the court without a jury, defendant was found guilty of armed robbery and sentenced to a term of not less than five and not more than ten years. The principal grounds urged for reversal are the identification of the defendant and the alleged prejudice of the judge.

On February 24, 1961, at about 1:00 a. m., a man walked into Vern's Friendly Lounge, a tavern at 1258 South Pulaski Road, Chicago, owned by Mrs. Arvern Williams. Garland Williams, her husband, was sweeping the floor near the front door, and Louise Coleman, her daughter, was behind the bar, washing glasses. Mrs. Williams was seated at the bar. The man walked to a jukebox toward the back of the tavern, stood there a few seconds, and then turned around with a pistol in his hand and said "This is a stick-up." Garland Williams, not understanding him, said "What?" and the man said "This is a stick-up and don't holler or I'll shoot you." Mr. and Mrs. Williams were instructed to get behind the bar, and the man said "Give me all the money you got." Mrs. Williams told her daughter to go to the register and give him the money. Her daughter took the cash drawer out and took out the money and handed it to the man, who then asked for a fifth of whiskey. Mrs. Coleman asked "What kind?" He said "Any kind," and she gave him a bottle of Teacher's Scotch. He then started toward the door, but came back and asked Mr. Williams for more money, saying "I believe you got some more money, you better give it to me because, you know, I'll kill you." Mr. Williams emptied his pockets, putting $2 on the bar, which the man took and left. The police were called, and the three of them gave a description of the robber.

On February 25, 1961 about 8:30 a. m., some thirty-one hours after the robbery, the defendant Milton Clemmon entered the tavern. Mr. and Mrs. Williams, another daughter Aretha Williams, and a customer were present. Mrs. Williams, who was talking on the telephone, asked Clemmon if she could help him. Mr. Williams, who was standing at one end of the bar, ran up to Clemmon, caught him, "patted" him down, told his daughter to lock the door, and had his wife

call the police. An officer arrived and took Clemmon to the Fillmore Street Police Station.

At the trial, Arvern Williams, Garland Williams and Louise Coleman testified to the account hereinbefore set out and identified the defendant as the man who had robbed the tavern. All three testified that they had identified Clemmon at a lineup at the Fillmore Street Police Station, although Mrs. Williams testified the robber was fourth from the left, Mr. Williams testified he was fourth from the right, and Louise Coleman said he was "No. 4."

Cora Lee Walls testified for the defense that she lived with the defendant; that she was not related to him; that her mother and her children lived with them; and that in the early morning hours of February 24, 1961, the defendant was at home in bed. Clemmon testified in his own behalf that on the morning of the robbery he was staying at the home of Cora Lee Walls.

■ Identification was adequately established. It is argued that there is a discrepancy in that Mrs. Williams testified that the robber was fourth from the left, while Mr. Williams testified that he was fourth from the right. Right and left are easily confused. Taxi drivers, who should be accustomed to such directions, frequently turn left when a passenger says "Right." Most people have to think twice when told to go to the right or left. The discrepancy is not significant. The court saw and heard these witnesses and his judgment on this phase of the case must be accepted by us.

■ The second question raised is the alleged prejudice of the trial judge. When the case was heard and the defendant found guilty, the judge in a hearing to determine the penalty asked if the defendant had a record. The state disclosed that he had been convicted in Arkansas of grand larceny in 1950, burglary in 1954, and grand larceny in 1955, and had been

discharged in January 1961, a month or so before the robbery in question. At that point the court said: "Why didn't he stay down in Arkansas? The county and state here are paying for his keep. We have enough of our own problems here without getting some of these fellows coming up and staying a month and then getting into trouble?" This remark, made after the defendant was found guilty, affords no basis for the charge of prejudice.

What is difficult to understand is that the robber, who presented a full opportunity to the witnesses to observe and identify him at the holdup, would go back to the saloon unarmed the next morning and enable Williams to see and identify him as the robber of the previous day. It seems strange that he would take such a risk. Yet, experience in criminal cases often reveals strange behavior on the part of the guilty. Perhaps, as psychiatrists have often said, there is in all offenders an impulse to court detection and to expiate the offense which lures them back to the scene of a crime.

We find no reversible error in the trial of this case.

Judgment affirmed.

DEMPSEY and SULLIVAN, JJ., concur.