STATE OF NORTH CAROLINA v. VIRGINIA TAYLOR SWINNEY.

(Filed 24 July, 1967.)

**1. Criminal Law § 25—**

> A plea of *nolo contendere* has the same effect insofar as punishment is concerned as a plea of guilty.

**2. Homicide § 30—**

> Punishment for involuntary manslaughter may be by fine or imprisonment not to exceed 10 years, or both, in the discretion of the court. G.S. 14-18.

**3. Criminal Law § 138—**

> A sentence within the statutory limit will be presumed regular and valid, but such presumption is not conclusive, and if the record discloses that the court considered irrelevant and improper matter in determining the severity of sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights.

**4. Same— Record held to show that court increased punishment for lawful conduct of defendant unrelated to crime charged.**

> The evidence tended to show that the court, in determining sentence upon defendant's plea of *nolo contendere* to the crime of manslaughter,

heard·evidence and cross-examined defendant with respect to a party at which there was dancing and drinking, held in defendant's home on the night of the offense, but the evidence disclosed that at the time defendant's husband attacked her and she shot him the party was entirely over and the guests had departed. There was no evidence that there was anything unlawful in connection with the party. The record contained remarks of the court disclosing that the court increased the severity of the sentence because of the unconventional conduct at the party. *Held:* The judgment must be vacated and the cause remanded.

**5. Criminal Law § 25—**

If upon the hearing of evidence in determining sentence upon defendant's plea of *nolo contendere* it appears that defendant is not guilty of the offense, the court may advise defendant to withdraw his plea of *nolo contendere*, although the court will not ordinarily do so *ex mero motu*.

PARKER, C.J., dissenting.

LAKE and PLESS, JJ., join in the dissent.

APPEAL by defendant, Virginia Taylor Swinney, from *McLaughlin, J.*, October 31, 1966 Mixed Session, UNION Superior Court.

The defendant was indicted for the murder of her husband, Granville Wayne Swinney. When arraigned she tendered, and the solicitor with the approval of the court accepted, a plea of *nolo contendere* to the crime of involuntary manslaughter.

The State called as its only witness the investigating officer, J. C. Clontz, who testified that pursuant to a call he went to the Swinney home in Waxhaw, Union County, about 3:00 on Sunday morning, October 9, 1966. In a bedroom downstairs, he found an oversized bed in disarray, a woman's night garment on a chair, two bullet holes in the wall, and a .22 caliber pistol with three exploded shells in the cylinder. The pistol was under the mattress. He found footprints near the center of the bed. "In my opinion the marks on the bed was *(sic)* those of a man's shoe."

Officer Clontz, acting on information, proceeded at once to the hospital in Charlotte, where he observed the body of Granville Wayne Swinney with a bullet hole in his chest. Defendant said, "I've killed my husband." On cross-examination, Mr. Clontz said she made the further statement "She didn't mean to do it, she loved her husband, she didn't mean to kill him." Mr. Clontz further testified that he saw marks and scratches on Mrs. Swinney's neck and arms — some were fresh, some. were old. He stated, "To my knowledge, Mrs. Swinney does not have any record. She has never been in any trouble." Mr. Swinney was 53 years old and weighed about 175 pounds.

The defendant testified in her own defense. Her evidence is here

summarized: She and Mr. Swinney had been married for 25 years. Five children were born of the marriage; the oldest now 15; the next oldest is 14 — both boys. "There are three little ones." A short time before October 9, 1966, the deceased had assaulted the defendant causing her to leave home with the three little children. She returned, however, at his request after he became sober. Defendant's mother, now 80, who lives close by, stated that defendant and the deceased got along well except when he was drinking. She knew of his having committed a number of assaults on the defendant.

According to defendant's further evidence, her husband wanted a dinner party and dance at the home on his birthday. The invited guests were the best customers of Swinney's TV Shop, operated by the deceased and the defendant. She did not want the party though she participated in it. Liquor, beer, and punch were served at the party. Defendant said she took three drinks during the evening but nothing but coffee subsequent to 11:00.

After the guests departed, she went to bed and went to sleep, leaving the light on for her husband. "The next thing I knew Mr. Swinney was on the bed choking me. . . . (F)inally I pushed my head down on the mattress and slipped out from underneath his hands, and when I did, he 'throwed' me up beside of the window . . . I bounced back on the bed, and he grabbed me again by my arms . . . He then grabbed me by the throat again, then stopped and walked out of the bedroom. . . . He turned around in the hall and I said 'Granville, don't come back in here and beat me any more.' . . . He said, 'I'm going to kill you this time.' Then I ran over there and got the gun, and I thought I could scare him, and he would stop; and I shot, I thought the ceiling, and then I just shot until I saw blood and then I rammed the pistol back under the mattress and went to call for help." She went with him to the hospital.

The court cross-examined the defendant at great length and announced reasons for his sentence, then entered the judgment that she serve from 5-7 years in the Women's Prison. She excepted and appealed.

*T. W. Bruton, Attorney General; Andrew A. Vanore, Jr., Staff Attorney, for the State.*

*Sanders, Walker & London by Robert G. Sanders and Larry Thomas Black for defendant appellant.*

HIGGINS, J. The defendant entered a plea of *nolo contendere* to the charge of involuntary manslaughter. While the plea is not a confession of guilt for all purposes, *State v. Thomas*, 236 N.C. 196,

72 S.E. 2d 525, nevertheless it has the same effect insofar as punishment is concerned as a plea of guilty. *State v. Cooper,* 238 N.C. 241, 77 S.E. 2d 695; *State v. Shepherd,* 230 N.C. 605, 55 S.E. 2d 79. Punishment for involuntary manslaughter may be by fine or imprisonment or both in the discretion of the court. G.S. 14-18; *State v. Adams,* 266 N.C. 406, 146 S.E. 2d 505; *State v. Blackmon,* 260 N.C. 352, 132 S.E. 2d 880; *State v. Grice,* 265 N.C. 587, 144 S.E. 2d 659; *State v. Dunn,* 208 N.C. 333, 180 S.E. 708. The imprisonment, however, may not exceed ten years. The defendant's contention that involuntary manslaughter is a misdemeanor for which punishment cannot exceed two years is not sustained.

By exception and assignment of error, the defendant challenges the sentence of 5-7 years in prison upon the ground the record clearly shows the presiding judge imposed the sentence, not for involuntary manslaughter to which the defendant had entered a plea, but for having participated in the dinner and dance party held in the Swinney home at which liquor was served. The record shows the party was over and the guests had departed; the defendant had gone to bed and was asleep when the deceased jumped on the bed and began assaulting her. The defendant had introduced evidence of her good character; there was none to the contrary. The State's only witness, Officer Clontz, said there was nothing against her. He corroborated her story that she first fired warning shots. He found two bullet holes in the walls of the bedroom. He corroborated her story that she was assaulted by testifying he saw the bruises and marks on her neck and arms. He corroborated her story that she was in bed when the attack began by testifying he found tracks in the bed "made by a man's shoe."

Notwithstanding evidence the defendant shot in self-defense, the plea of *nolo contendere* would permit the court to impose a sentence of not more than ten years for involuntary manslaughter. Being within the limits there is a presumption the judgment and sentence are regular and valid. That presumption, however, is not conclusive, and .if the judge by his own pronouncement shows clearly that he imposed this sentence for a cause not embraced within the indictment and the plea, then the presumption of regularity is overcome, and his sentence is in violation of the defendant's rights. When Judge McLaughlin acted as he said he did under the belief that it would be a dereliction of his duty to the community if he did not punish the defendant severely on account of the party, he exceeded his judicial power and committed error of law. His lengthy cross-examination of the defendant and the statement in connection with and as a part of the sentencing procedure permitted no other reasonable conclusion or inference but that he was punishing not for involun-

tary manslaughter but because of the party in the Swinney home. If there was anything unlawful in connection with the party of which there was no evidence in the record implicating the defendant, that should be the subject of another indictment. The evidence is conclusive, however, that the entire trouble between the defendant and her husband occurred after the party was over, the guests were gone, and the defendant had gone to bed and was asleep.

We commend Judge McLaughlin for placing in the record the reason for his sentence. It clearly appears that sentence was not for involuntary manslaughter. "A fair jury in criminal cases and an impartial judge in all cases are basic requirements of due process." *Rice v. Rigsby,* 259 N.C. 506, 131 S.E. 2d 469; *Ponder v. Davis,* 233 N.C. 699, 65 S.E. 2d 356; *In Re Murchison,* 349 U.S. 133, 99 L. Ed. 942. "Every suitor is entitled by the law to have his cause considered with the cold neutrality of the impartial judge." *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481.

Upon a plea of *nolo contendere* it is usual procedure for the court to hear evidence "to enable it to exercise a *sound discretion* in determining the extent of the punishment." *State v. Cooper,* 238 N.C. 241, 244, 77 S.E. 2d 695, 698. It may be, therefore, that in this case the State had other evidence which it did not produce; that defendant knew of this evidence; and that she was well advised to enter the plea of *nolo contendere.* However, the evidence in this record before us — which was also the evidence before the judge — is amply sufficient to make out a case of self-defense.

As Parker, J. (now C.J.), said in *State v. Barbour,* 243 N.C. 265, 267, 90 S.E. 2d 388, 390: "If, after hearing evidence to aid the Court in determining the sentence to be imposed, it appears that the defendant is not guilty, the Court may advise him to withdraw his plea of *nolo contendere,* and stand a jury trial." Of course, in the absence of a request by a defendant to withdraw his plea of *nolo contendere,* the court ordinarily will not strike out such a plea *ex mero motu. State v. Shepherd,* 230 N.C. 605, 55 S.E. 2d 79. The evidence at the next hearing will no doubt chart the correct course for court and counsel.

For the reasons assigned, the judgment is vacated, and the cause is remanded for further consideration as to punishment. The judge on whom falls the responsibility may review the record of the trial and conduct such further inquiry as will enable him to enter a proper judgment.

The prison sentence is vacated and the cause remanded for a proper judgment.

Parker, C.J., dissenting: This was stated in the majority opinion:

> "The defendant was indicted for the murder of Granville Wayne Swinney, her husband. Upon arraignment she tendered, and the solicitor, with the approval of the Court, accepted a plea of *nolo contendere* to the crime of involuntary manslaughter."

Both the State and the defendant offered evidence, defendant testifying in her own behalf.

Before passing judgment upon defendant, the trial judge in open court made extended remarks concluding with this statement: "I'm not going to turn my back on law and order, I don't 'intent' (intend) to." The defendant voluntarily took the stand. Her purpose was to give the court her version of the case and of related matters so that the court might determine what sentence to impose. The defendant's testimony was that there were about 20 people, including herself and her husband, at a party at her house, which she described as "a supper party, dancing, drinking," in a 14 x 20 living room from 9 p.m. to 2 a.m. The defendant testified: "I picked the liquor up myself the first of the week. . . . I bought eight pints. . . . I went to Charlotte to get the liquor. . . . I made preparations for the party, but I was not looking forward to it." She and her husband drank liquor and danced with their guests. The picture disclosed by defendant's testimony in this case is not that of a quiet dinner party but of a drunken brawl, the sequel being an assault by the drunken husband upon the hostess and the fatal shooting of the host. Killing a man under those circumstances and the defendant entering a plea of *nolo contendere* to the crime of involuntary manslaughter is not a slight and trivial matter. I respectfully dissent from this statement in the majority opinion:

> "When Judge McLaughlin acted as he said he did under the belief that it would be a dereliction of his duty to the community if he did not punish the defendant severely on account of the party, he exceeded his judicial power and committed error of law. His lengthy cross-examination of the defendant and the statement in connection with and as a part of the sentencing procedure permitted no other reasonable conclusion or inference but that he was punishing not for involuntary manslaughter but because of the party in the Swinney home."

In my opinion, the unanimous decision of this Court in *S. v. Sullivan*, 268 N.C. 571, 151 S.E. 2d 41, is in point and is controlling. In that case the defendant was charged in two indictments, Nos.

9494 and 9495, with breaking, entering, larceny and receiving. Through his counsel and in his own proper person, he entered a plea of guilty to breaking and entering and larceny in both cases. The State offered testimony showing his guilt as charged. Defendant was a resident of the State of Maryland. Defendant offered no evidence. The trial court consolidated the two cases for judgment and entered a sentence of imprisonment for not less than five nor more than seven years. He appealed to the Supreme Court. The unanimous opinion of the Supreme Court is as follows:

> "The defendant's sole exception is that he did not receive a fair and impartial trial before a fair tribunal. In support of his claim he quotes the presiding judge at the time of sentencing him: 'North Carolina has been made a picking place for criminals from Maryland. They are riding down here regularly from Maryland, robbing people who are trying to make an honest living. I find this true in about every court I hold.'
>
> "This Court does not intend to restrict informal remarks made by a judge at the time of pronouncing judgment, but there is nothing in Judge Burgwyn's statements to justify the defendant's exception, even though he be a resident of Maryland.
>
> "The undisputed facts in the cases, plus the defendant's plea of guilty in both, justified a substantial sentence. The fact that the court imposed only a 5-year sentence when a total of 40 years imprisonment was permissible, refutes his claim that he was not treated fairly.
>
> "No error."

I entirely agree with this statement in the *Sullivan* case: "This Court does not intend to restrict informal remarks made by a judge at the time of pronouncing judgment. . . ." Every judge who has had experience on the trial court in criminal practice knows that often, and properly so, a defendant's lawyer makes an impassioned plea before a crowded courtroom that the court should grant leniency to his client and impose a sentence of probation or suspend judgment, and the solicitor for the State as a rule does not reply. Quite often the trial judge feels that it is proper for him to give his reasons for not granting the request of defendant's counsel, and at other times to give his reasons for imposing a severe sentence. In my opinion the trial judge here did not make a happy choice of words in his extended remarks before pronouncing judgment, but I think it can be fairly seen from his language that it was in reply to an impassioned plea for leniency from defendant's counsel and to explain his reason why he felt that punishment of imprisonment should be imposed.

What is said by the Supreme Court of Mississippi in *Spiers v. State*, 231 Miss. 307, 94 So. 2d 803, is relevant here: "It may be conceded that the judge's remarks evince a zeal for the maintenance of law and order. . . . We cannot, however, under the facts of this case, translate this laudable zeal into bias, prejudice and passion against the appellant, or construe it as a prejudgment of the appellant's case."

I think the language of the Court in *People v. Clemmon*, 51 Ill. App. 2d 216, 201 N.E. 2d 11 (1964), is apposite:

> "The second question raised is the alleged prejudice of the trial judge. When the case was heard and the defendant found guilty, the judge in a hearing to determine the penalty asked if the defendant had a record. The State disclosed that he had been convicted in Arkansas of Grand larceny in 1950, burglary in 1954, and grand larceny in 1955, and had been discharged in January 1961, a month or so before the robbery in question. At that point the court said: 'Why didn't he stay down in Arkansas? The county and state here are paying for his keep. We have enough of our own problems here without getting some of these fellows coming up and staying a month and then getting into trouble.' This remark made after the defendant was found guilty, affords no basis for the charge of prejudice."

See *United States v. Lattimore*, 125 F. Supp. 295.

It is clear to my mind from the statement of the trial judge, that he thought defendant should receive a prison sentence because of her plea of *nolo contendere* of involuntary manslaughter, and not be placed on probation or given a suspended sentence, or some lesser form of punishment. The sentence imposed upon defendant's plea of *nolo contendere* to the crime of involuntary manslaughter was well within the maximum limits of punishment for that offense. Such being the case, it is not for the Court to say that it was excessive. That is a matter for those vested with the power to exercise clemency. While not approving of the trial judge's extended remarks before sentencing, I can see no legal reason to disturb the judgment below. I vote to affirm the judgment below.

LAKE and PLESS, JJ., join in this dissenting opinion.