SOUTHWICK, P.J,
Dissenting:
¶ 12. I find that the evidence was insufficient to prove that Lederrick Chaney committed a burglary. There was no proof that he participated in breaking into the building which is necessary for guilt of burglary. The majority says that disbelieving witnesses is always within the prerogative of jurors. Certainly so. But Supreme Court precedents reveal that to replace plausible evidence that is consistent with the physical evidence must be something more than speculation arising from a desire not to believe a witness. The issue is not whether the defendant proved his explanation to be true, but whether the State proved the elements of the crime. I would reverse and remand.
STATEMENT OF FACTS
¶ 13. Though the majority describes the facts, I will repeat some of them in order to highlight what I find absent in this case. A break-in occurred at Loeb’s Men’s Store in Meridian, on January 1, 1999. Several days after the burglary, the sheriffs office received a citizen’s tip regarding the crime. A warrant was issued for a search of the house of Lederrick Chaney’s grandmother. Found there was some of the merchandise later proved to have been taken from Loeb’s.
¶ 14. Chaney, William Glass, and Lakel Cross were indicted for burglary and grand larceny. The State introduced at Chaney’s trial the written statements that had been given by Chaney and Cross soon after their arrest. Instructions were given the jury both as to burglary and grand larceny. One instruction stated that Chaney could be found guilty of grand larceny only if the jury found that he was not guilty of burglary. The jury found guilt as to burglary. Chaney then appealed.
DISCUSSION
¶ 15. The only issue on appeal is the sufficiency of the evidence to support the conviction. In particular, Chaney argues that there is no evidence that he participated in breaking into the store. Instead, he argues that the undisputed evidence was that the breaking occurred before he arrived.
¶ 16. Both Chaney and co-indictee Lak-el Cross gave statements when they were arrested three days after the burglary. Neither person testified at trial; no evidence incriminating Chaney was found at the scene; no eyewitnesses other than the perpetrators were found. Therefore these statements are the sole direct evidence of the nature of Chaney’s participation in the theft from the store other than that he ended up with some of the spoils. Cross and Chaney said that an acquaintance contacted them at Chaney’s house. In his statement, Cross called the person “Bone *117 head” and “William,” while Chaney said that his name was “William Glass.” Glass allegedly told Chaney and Cross that he knew about a business that had already been broken into. The three decided to take advantage of the opportunity. Glass picked up Chaney and Cross and all three went to the store. There, or so both statements asserted, they found the window already broken and the door pushed open. Chaney performed lookout duties while Glass and Cross walked inside the already open door. A substantial quantity of merchandise was taken and all three then left.
¶ 17. When a passerby on the night of the burglary discovered the break-in, he said that the door was shut. There was no testimony from anyone that the door would automatically close and could not be left open. The investigating officer testified during cross-examination that it was possible that the break-in had occurred before Chaney arrived and the building then left open. On redirect examination, he also asserted that Chaney may have been involved in the entire crime.
¶ 18. The necessary “breaking” for burglary is “any act or force, however, slight, ‘employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.’ ” Alford v. State, 656 So.2d 1186, 1192 (Miss.1995), quoting Smith v. State, 499 So.2d 750, 752 (Miss.1986). A person can be an accessory to a burglary without committing the breaking himself, but he must be present and performing some role to aid the commission of the crime. Swinford v. State, 653 So.2d 912, 915 (Miss.1995).
¶ 19. If the breaking had already occurred before Chaney and Cross became aware of the potential for burglarizing this store, and if none of the three used even minimal force to create an opening in the doorway once Chaney and Cross became involved in the scheme, then Chaney and Cross would not be accessories to the burglary itself. They might be accessories after the fact. Miss.Code Ann. § 97-1-5 (Rev.2000). Their statements definitely proved a trespass and larceny. Miss Code Ann. § 97-17-93 (Rev.2000) (trespass); Miss.Code Ann. §§ 97-17-41 (Rev.2000) & 97-17-43 (Rev.2000) (larceny). However, if Chaney and Cross were not involved in anyway with Glass until after the breaking, and no force to create or widen an opening was made once they did become involved, then Chaney and Glass would not be liable for burglary regardless of whether Glass was the person who earlier broke in the door.
¶ 20. No direct evidence showed that Chaney or someone else while he was a participant in the criminal activity broke in the store. Chaney and Cross’s statements were not inconsistent with each other or the physical evidence, implausible, or impeached in some way. The jury instructions are not challenged as incorrectly explaining what had to be found. A definition of “breaking” was included: “any force, regardless of how slight, employed to gain entry into the building.”
¶ 21. The rather straightforward question that we face, then, is whether the jurors’ right to be the judge of the credibility of witnesses (Mangum v. State, 762 So.2d 337, 342 (Miss.2000)), permits them to decide that Chaney’s prior written statement was unbelievable and that the explanation was too convenient. Once deciding to reject Chaney’s explanation, the jury must then be able to find controlling the inferences that arise from the other evidence. Those inferences are based on the facts that Chaney admitted, including that he assisted two other people in going to a store after hours with the purpose of committing larceny, that it was necessary for the door to have been broken into at some stage for the plan to be accom *118 plished, and that they did commit larceny. The inference necessary for conviction is that Chaney’s group while he was present committed the breaking.
¶ 22. Burglary is frequently proven by inferences. In part that is because the often late-night and secretive -means by which the crime is committed provide no eyewitnesses other than the perpetrators themselves. Specific suspects may be implicated by physical evidence, such as fingerprints, blood samples, footprints, discarded or lost personal items, and perhaps best of all, surveillance camera film. Some participants may confess and implicate others as well. Still, the State often attempts to prove that a defendant was a burglar by proving that he was in possession of property recently taken in a burglary. The Supreme Court, though, has not allowed the inference to arise strictly from possession. “The circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession must be viewed.” Brooks v. State, 695 So.2d 593, 594 (Miss.1997). Since allowing the inference of burglary to arise strictly from “unexplained” possession of recently stolen property clashes with an accused’s right to give no explanation at all, the sufficiency of the inference of burglary is analyzed with multiple considerations:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Shields v. State, 702 So.2d 380, 383 (Miss.1997).
¶ 23. What is especially noteworthy for our issue is that the Court has found that the inference of guilt is strongest when the accused gives no credible explanation of his possession or the explanation is patently false. Brooks, 695 So.2d at 595, In a related crime, namely, the knowing receipt of stolen property, the Supreme Court has held that the knowledge of the property’s theft ancestry may not be inferred solely from the fact of possession. Miss.Code Ann. § 97-17-70 (Rev.2000); Johnson v. State, 247 So.2d 697, 698 (Miss.1971). That is because knowledge is the central element of the crime and must be both alleged and proved by other circumstances. Id.; Whatley v. State, 490 So.2d 1220, 1222 (Miss.1986).
¶ 24. What these related precedents mean is that despite the fact that jurors are the arbiters of the weight and credibility of evidence, some inferences that jurors might be willing to make are legally impermissible. Whether jurors are permitted to infer contrary to plausible, unimpeached testimony has also been addressed by the Mississippi Supreme Court. Several lines of cases exist.
1) Homicide prosecutions. “[WJhere the defendant or the defendant’s witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933) (emphasis added), quoted in Walters v. State, 720 So.2d 856, 867 (Miss.1998).
¶ 25. The Weathersby rule explicitly applies to homicides. That restriction suggests by itself that the “normal” rule in criminal cases may be otherwise. There are precedents, though, that either apply *119 Weathersby caselaw to non-homicide cases or else suggest that the same rule exists in other criminal prosecutions. Those are discussed next.
2) Entrapment. The Supreme Court has with some frequency since 1976 found that undisputed, unimpeached testimony that a defendant in a prosecution for the sale of drugs was given the drugs by an undercover agent and then sold them to another undercover agent, required a judgment of acquittal since this was found to be entrapment as a matter of law. The jury is not permitted just to decide that the accused or his witnesses should not be believed. Pulliam v. State, 592 So.2d 24, 27 (Miss.1991). In explaining the rule, the Court said “that the defendant is entitled to discharge only where the evidence stands un-contradicted, undisputed, and unim-peached.” Pulliam, 592 So.2d at 27. The Court said that this rule as it had been applied to “supply and buy” cases should be understood “in the context of our long-settled law that a jury has no right to disregard arbitrarily evidence that is un-contradicted and not unreasonable or improbable on its face.” Id. The Pulliam Court cited several cases for this proposition.
a) McLeod v. State, 140 Miss. 897, 901, 105 So. 757, 757 (1925). The accused was charged with carrying a concealed weapon. His testimony was that he fit within the statutory right to carry a weapon while traveling “beyond the neighborhood of his acquaintance, and was a stranger to the people along the line of his journey and not a tramp.” Id. His evidence was undisputed and consistent with the other evidence in the case. This required that the defendant be acquitted.
b) Heidel v. State, 587 So.2d 835, 839 (Miss.1991); Harveston v. State, 493 So.2d 365, 370 (Miss.1986); Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). All of these were homicide cases and applied the Weathersby rule.
c) Fortenberry v. State, 216 Miss. 243, 251, 62 So.2d 325, 327 (1953). This was a prosecution for the illegal distribution of beer. The Court found the defendant’s explanation for the possession to be plausible and unimpeached in any way. An acquittal had to be given. The Court cited the first case above, McLeod, as its authority.
¶ 26. What is important about the entrapment cases is that two different rationales have been used. One focuses on the fact that entrapment is an affirmative defense. Once an accused has presented a prima facie case on entrapment, the burden of production and also of proof shifts to the prosecution; the defendant is also entitled to have an instruction given the jury on entrapment. King v. State, 530 So.2d 1356, 1358 (Miss.1988). If “the evidence stands uncontradicted, undisputed, and unimpeached, even though the jury may not have believed the appellant, that testimony stands and makes out the defense. In cases such as this, prosecutors must have rebuttal evidence at hand to refute such testimony.” Gamble v. State, 543 So.2d 184, 185 (Miss.1989).
¶ 27. That rationale has been challenged. Some cases have held that entrapment defense also must overcome whether the accused had the predisposition to commit the crime and the State only provided opportunities. The Court has explained that apparent defect in the supply and buy analysis by saying “that many cases which we had labeled entrapment-and discharged the defendant-were fundamentally cases of official misconduct.” Tanner v. State, 566 So.2d 1246, 1249 (Miss.1990). If the State both supplies the defendant the contraband and then also provides him a buyer, this is “an excessive degree of involvement on behalf *120 of the state” and is misconduct. Moore v. State, 534 So.2d 557, 559 (Miss.1988).
¶28. The perception of improper law enforcement entanglement explains why, even though the evidence that is undisputed as to some factual issues may not disprove the predisposition issue, that a directed verdict is still apparently necessary in supply and buy entrapment. Williams v. State, 761 So.2d 149, 155-56 (Miss.2000). However, in this burglary prosecution, there is no lingering intent or predisposition issue left unaddressed by the undisputed and plausible evidence.
¶ 29. I note some similarities in the cases discussed so far. With many of the homicide cases, which often involve self-defense as the undisputed matter, and also with entrapment, it is an affirmative defense that has been undisputed and is consistent with all other evidence. That is also the situation with the concealed weapon statute precedent, in which the accused presented unimpeached testimony that one of the statutory exceptions applied to him and he could carry a weapon. McLeod, 105 So. at 757. Thus, most but not all of the precedents could be pigeon-holed as situations in which the State failed to perform its obligation of production and proof once a prima facie case of an affirmative defense has been made. That suggests that once the normal inferences that arise from circumstantial evidence have been attacked by direct evidence of an innocent explanation in the nature of an affirmative defense, the State must present more.
¶ 30. It is difficult to limit the evidentia-ry rule on unrebutted evidence this way. Not all of the homicide cases involve self-defense. E.g., Dew v. State, 309 So.2d 857, 859 (Miss.1975) (unrebutted statement of accused, consistent with physical evidence, that he accidentally shot wife in struggle over a gun entitled him to acquittal). There is also at least one precedent that indicates, though only as dicta, that the rule is not homicide-specific. That is reviewed next.
3) General criminal rule regarding sufficiency of evidence. The Court once suggested that the Weathersby rule has broader application than to homicide prosecutions. In the opinion, the Court first described the normal appellate review standard on an issue of sufficiency of evidence:
we must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the State’s case — in the light most favorable to the State. The credible evidence which is consistent with the verdict must be accepted as true. The State must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury.
Harveston v. State, 493 So.2d 365, 370 (Miss.1986) (citations omitted). Then the court stated that the Weathersby rule “is familiar to all, although we sometimes overlook the fact that it is nothing more than a restatement of the general rule recited above; that is, if the defendant and his witnesses are the only eyewitnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt.” Harveston, 493 So.2d at 371. (em *121 phasis supplied). The Court was saying that if such plausible evidence exists, undisputed by physical evidence or other witnesses, then under the normal sufficiency of evidence review the appellate court would have to find that no reasonable juror could find the accused guilty beyond a reasonable doubt.
¶ 31. Harveston itself was an appeal from a murder conviction, so the broader application of the rule was only identified and not employed. At least a few appeals from convictions for crimes other than homicides have considered the Weathersby rule without categorically rejecting it. For example, in a burglary prosecution the Court analyzed the evidence and affirmed only because it found that the defendant’s “version of events was contradicted by extensive testimony as well as direct evidence in the form of the store videotape. The Weathersby rule is accordingly inapplicable to the present case.... ” Haynes v. State, 744 So.2d 751, 754 (Miss.1999).
¶ 32. It is difficult to conclude, in light of the variety of precedents that I have discussed, that Harveston reached an aberrant conclusion about the wider applicability of this rule that should be dismissed simply because it was dicta.
4) Civil analog to Weathersby. “Uncon-tradicted or undisputed evidence should ordinarily be taken as true by the triers of the facts. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously, discredited, disregarded, or rejected, even though the witness is a party or interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact.” Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 635, 53 So.2d 69, 75 (1951), quoted in Collins v. General Elec. Co., 239 Miss. 825, 835, 123 So.2d 609, 614 (1960), and cited in Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1333 (Miss.1986). The mere fact that the witness is a party does not appear to make the evidence untrustworthy.
¶ 33. Lucedale Veneer was a workers’ compensation case and almost all of the later references to the precedent have been in similar litigation. E.g., Fowler v. Durant Sportswear, Inc., 203 So.2d 577, 579 (Miss.1967). The authority Lucedale itself cited, though, was a personal injury case. Lucedale Veneer, 211 Miss. at 635, 53 So.2d at 75, citing Mobile, Jackson & Kansas City R.R. Co. v. Jackson, 92 Miss. 517, 524, 46 So. 142, 143 (1908) (“Juries cannot arbitrarily and capriciously disregard testimony of witnesses, not only un-impeached in any of the usual modes known to the law, but supported by all the circumstances in the case.”).
5) To determine what is understood to be the general rule of evidence, and then decide whether Weathersby, Lucedale Veneer, the entrapment cases, and even Harveston are examples or exceptions, I turn to a standard evidence treatise. Four general principles about trial testimony are set out in John Henry Wigmore’s treatise. I also cite Mississippi precedents that support each proposition. VII Wig-more on Evidence 342-348, § 2034 (Chad-bourn ed.1978).
1) “Credibility does not depend on numbers of witnesses.” Turner v. State, 748 So.2d 706, 709 (Miss.1999); Spiers v. State, 231 Miss. 307, 94 So.2d 803 (1957).
2) “In general, the testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence upon which the jury may found a verdict.” White v. State, 507 So.2d 98, 102 (Miss.1987).
3) “Conversely, the mere assertion of any witness need not be believed, even *122 though he is unimpeached in any manner, because to require such belief would be to give a quantitative and impersonal measure to testimony.” No Mississippi authority was found for this proposition.
4) “As a corollary of the first proposition, all rules requiring two witnesses or a corroboration of one witness, are exceptions to the general principle.” Hogan v. State, 516 So.2d 474, 478 (Miss.1988) (corroboration in perjury conviction is special common law or statutory rule).
¶ 34. Interestingly, the Weathersby approach to Wigmore’s third numbered proposition is described this way: “the loose and futile, but not uncommon, heresy that an unimpeached witness must be believed is illustrated in the following opinions.” VII WigmoRE on Evidence, 344 n. 3 at 346. Weathersby is cited as one of the heretical cases. That label is simplistic. Weathers-by considers the most serious of criminal offenses, homicide, one for which in some situations the death penalty is uniquely available, and creates an exception to what apparently is followed in most states. The Mississippi Supreme Court has declared that for homicide cases, “beyond a reasonable doubt” requires more than credibility doubts about unimpeached and plausible testimony.
¶ 35. This heresy, if that it is, has also been applied to the question of entrapment in drug sale cases, and in some civil cases. To impose an unusual evidentiary rule in workers’ compensation cases would not be extraordinary, especially considering that claims are to be viewed through the filter of the “beneficent purposes of the act.” McCrary v. City of Biloxi, 757 So.2d 978, 981 (Miss.2000). Whatever that means, it at least requires some liberality in considering the claim. However, if a rule that requires witnesses’ unimpeached statements to be accepted actually exists for all civil cases, then surely it cannot be ignored for any criminal cases. It would be nonsensical in trials for which the jury must find facts beyond reasonable doubt, to allow convictions despite unimpeached, plausible testimony exonerating the accused in whole or part, while similar testimony in a civil case in which the burden is only a preponderance of the evidence must be accepted as true.
¶ 36. I conclude that there is in fact a fairly universally applied rule in Mississippi, universal at least once it is noted and discussed. It applies in all criminal cases though likely not in many civil suits. It largely arises from the review standard applicable to criminal cases. That review is premised on considering all the evidence, both direct and circumstantial, in a light most favorable to the verdict, accepting that the jury makes the credibility choices. When the evidence is so considered, the court must be able to conclude that reasonable jurors could have found the accused guilty. Harveston, 493 So.2d at 370-71. Witnesses may be disbelieved, but to find guilt beyond a reasonable doubt, there must be some basis on which to disbelieve. Since the same review standard applies to all criminal convictions, this rule is not homicide-specific.
¶ 37. Therefore, if the only eyewitnesses to the offense present a version of the events that is reasonable, consistent with innocence entirely or as to some element of the crime charged, and there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then the jury may not reject that version. I would hold that this rule cannot apply if the relevant issue is something objectively unknowable such as the intent of the accused. That is a matter usually only proved by inferences from circumstances, and therefore a statement denying the necessary intent or *123 knowledge is simply evidence to be weighed by the jury.
¶ 38. When the issue is what action the accused took, the sole eyewitness evidence on that controls if it conforms to this statement of the rule. If the issue is what was in the defendant’s mind, the accused’s descriptions of his thoughts are not controlling, in part because contemporaneous actions can speak louder than later words as to what an accused had in mind.
¶ 39. This iteration includes quite a few qualifiers. The civil rule such as in Luce-dale Veneer includes the phrase “unless shown to be untrustworthy.... ” Lucedale Veneer Co., 53 So.2d at 75. The supply and buy precedents sometime state that the evidence must be “unimpeached.” Pulliam, 592 So.2d at 27. It is unlikely that this means that every general credibility challenge to the witness prevents application of this rule. Since the demean- or of the witness is always a possible reason that a jury might not believe testimony, if demeanor issues prevent this rule from applying, then the rule would in practical terms not even exist. But it does exist. Besides demeanor, impeachment can occur if the witness’s general credibility, a matter to be distinguished from the-State’s presentation of evidence, conflicts with the witness’s evidence about events. If general credibility is attacked such as through evidence of character or by showing conviction of prior crimes, perhaps that is the impeachment to which some of these cases allude. M.R.E. 608 & 609.
¶ 40. I suggest, then, that even if evidence is undisputed by other testimony or by physical evidence, and even if the story presented is plausible, some questions under this caselaw still exist. Here, though, the sole evidence on the issue of breaking was from the two written statements, one by Chaney and the other by his co-indictee Cross. Even if demeanor could be a reason to reject testimony under this rule, neither person had any demeanor to examine. The demeanor while the accused sat at the defense table certainly cannot be relevant. 4 Spencek A. GaRD (ed.), Jones on Evidence 322 n. 7 § 29:13, (1972). The State made no other showing regarding Chaney or Cross’s credibility. The State introduced the statements as evidence. This did not make them the sponsors of all that the statements said, but once these were in evidence and presented a plausible, credible explanation, the State needed conflicting evidence — from the physical facts, from other witnesses, or in some other form.
¶ 41. A final point is whether that necessary conflict can arise just from circumstantial evidence. Precedents have held that circumstantial evidence has the same weight as direct evidence and is not of lesser quality. McRee v. State, 732 So.2d 246, 250 (Miss.1999); Sherrell v. State, 622 So.2d 1233, 1238 (Miss.1993). Since jurors resolve conflicts in evidence, can an inference that is permissible but not required create a conflict with the accused’s statements that meet the test described in this opinion, and then may that conflict be left to the jury to resolve? It may not. Absent some undermining of the explanation given by the accused or some inherent implausibility of the story, there is no acceptable basis to choose the inference over the statement.
¶ 42. What is a matter of law is whether the story is sufficiently plausible and consistent with the physical evidence. If these were fact questions, then the precedents that we have cited would not have been discussing the possible right to a directed verdict of acquittal but instead whether a jury instruction should have been given on whether the story was plausible and consistent. I find nothing inherently fantastic that one criminal either *124 commits a breaking himself or becomes aware of the act of others, and only thereafter enlists the aid of two more criminals to assist in the safer plundering of a business. I will say, though, that this conclusion of basic plausibility is not without some doubt. It is arguable, but I conclude otherwise, that Chaney’s disavowal of a role in the breaking despite doing everything else relevant for a burglary was “too clever by half,” that is, too tight a line drawing around the known facts. The physical evidence was consistent, including that the door could have remained open after an earlier breaking, then was shut when all three left.
¶ 43. The result that I find compelled by these precedents might be categorized as the lesser of evils. It is difficult to say that guilt can be reliably found beyond a reasonable doubt if jurors simply are deciding .that a defendant’s witnesses are committing perjury when giving a plausible explanation of events, undisputed by physical evidence and unchallenged in any other way. On the other hand, it is unsettling to require acquittal simply because a defendant may be mentally quick enough to concoct a plausible story undisputed by physical evidence and unchallenged in any other way. The Supreme Court’s precedents first reveal that it is rare that this situation factually will arise. These same precedents, though, are based on a determination that when it does, the choice is clear.

Conclusion

¶ 44. Despite my conclusion as to burglary, Chaney’s guilt as an aider and abettor of larceny is supported in the evidence. Larceny, though, is not a lesser-included offense of burglary. Smith v. State, 725 So.2d 922, 927 (Miss.Ct.App.1998). If it were and our reversal was as to an element that solely is in the greater, then we could affirm on the lesser charge since the jury found guilt of all the elements for the greater. Alford, 656 So.2d at 1191. For burglary all that is required is that Chaney was a principal to the breaking and entering by someone with the intent to commit larceny. Actually committing the larceny requires taking and carrying property away; burglary does not. Smith, 725 So.2d at 927. One way to understand why we could not reverse for burglary and affirm for larceny, is that the jury did not need to find that anyone had taken and carried property away to convict on burglary. The burglary instruction properly stated that conviction should occur if jurors found that Chaney participated in the breaking “with the intent to take[,] steal and carry away valuables....” When the jury found Chaney guilty of burglary, they legally only found that someone entered with this intent. Even though the evidence is overwhelming that the larceny was completed, we could not in essence direct a verdict that Chaney committed the crime by handing down a judgment of conviction of larceny. Turner v. State, 573 So.2d 1340, 1343 (Miss.1990) (there can be no directed verdict of guilt).
If 45. New proceedings on grand larceny would not violate Chaney’s right to be free from double jeopardy. Having gained reversal on appeal, Chaney cannot claim double jeopardy from a second prosecution on grand larceny unless in the earlier trial he had been implicitly acquitted or unless the reason for the reversal is the insufficiency of the evidence on that charge. Charles H. Whitebread & Christopher Slobogin, Criminal Procedure 798-99, § 30.03 (1993), citing Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), and Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). On the first point, since the jurors had been instructed to consider grand larceny only if they did not find that Chaney had *125 committed a burglary, the verdict of guilt on burglary prevented any decision as to the grand larceny. As to the second point, I find evidentiary surfeit, not insufficiency, on the larceny charge.
¶ 46. Chaney also admitted that he participated in a trespass. Trespass is a lesser-included offense of burglary. Alford v. State, 656 So.2d at 1191. However, I would not enter judgment for that offense. The jurors were instructed that if they did not find guilt of all the elements of burglary, they were then to consider whether Chaney had participated in the commission of larceny. Since I find error in the verdict on burglary, we should remand for further proceedings regarding the larceny.
McMILLIN, C.J., KING, P.J., THOMAS AND IRVING, JJ., JOIN THIS. SEPARATE WRITTEN OPINION.