STATE OF NORTH CAROLINA v. RICKY ALLEN BRIGHT

No. 14

(Filed 4 November 1980)

1. **Criminal Law § 84; Searches and Seizures § 25– insufficient affidavit for search warrant – admission of seized evidence – harmless error**

    The affidavit upon which a search warrant for defendant's motel room was issued was fatally defective where the affidavit contained facts from which the magistrate could form a reasonable belief that the crimes of kidnapping and rape had been committed by a slender white man about six feet tall who had red curly hair and that the victim was assaulted in an automobile registered in defendant's name and parked in front of the motel, but the affidavit contained only a conclusory statement that defendant was registered in the motel, contained no information or circumstances indicating that defendant was the person described in the affidavit, and was therefore insufficient to support an inference that defendant was the person who committed the crimes and that the articles sought would be in his motel room or would aid in the apprehension or conviction of the offender. However, evidence admitted as the result of the search of defendant's motel room was not sufficiently prejudicial to require a new trial where the only article taken pursuant to the search under the warrant which revealed any probative evidentiary matter was a blanket containing two stains of type A blood, the same type as that of the victim, but such evidence was cumulative and of little probative value since type A stains were found in the automobile in which the assault occurred, and an expert testified that he could not determine the age of the stains on the blanket or even whether the stains were placed on the blanket at the same time.

2. **Searches and Seizures § 23– warrant to search automobile – sufficiency of affidavit**

    An affidavit upon which a warrant to search defendant's automobile was issued contained sufficient facts and circumstances to support a finding by the magistrate that there was reasonable cause to believe that the search would reveal the presence of the articles sought and that such objects would aid in the apprehension or conviction of the offender.

3. **Criminal Law § 99.9– voir dire – court's leading questions to child witness**

    In this prosecution for rape and kidnapping, the trial court did not err in asking leading questions of the seven year old victim during the *voir dire* hearing on defendant's motion to suppress identification testimony since G.S. 15A-1222 does not apply when the jury is not present during questioning, a child may be asked leading questions concerning delicate matters of a sexual nature, and the trial court may question a witness to clarify his testimony.

4. **Criminal Law § 66.9– photographic identification – no impermissible suggestiveness**

    The trial court properly determined that a pretrial photographic identification procedure was not impermissibly suggestive where the court found

State v. Bright

upon supporting *voir dire* evidence that a kidnapping victim was in the presence of her abductor for approximately two hours, that shortly after being released she gave the police a description of her abductor which was consistent with her trial testimony, and that the photographic display consisted of eight black and white photographs of the same quality showing persons with glasses, curly hair and basically the same facial features.

5. **Criminal Law § 53– expert medical testimony – cause of bruises**

A medical expert was properly permitted to state his opinion that bruises on a kidnapping and rape victim's face "looked as though that pattern could have been made by fingers."

6. **Arrest and Bail § 3.7– probable cause for arrest**

Officers had probable cause to arrest defendant for kidnapping and rape, and evidence seized pursuant to the arrest was thus not tainted by an illegal arrest, where the seven year old victim had been abducted from a bowling alley; the victim described her assailant as a white, slim male with reddish brown hair, described the automobile which had transported her as big, blue, old, "with two humps on the back," and stated that there were beer bottles in the back; an officer learned that defendant met the description given by the victim and that he had been seen at the bowling alley prior to her disappearance; the officer learned that defendant lived at a motel and drove a 1967 Chevrolet which matched generally the description the victim had given; officers saw the Chevrolet at the motel and determined that it was registered to defendant; before making the arrest, officers observed defendant and noted that he matched the description given by the victim of her assailant; and officers noted that the Chevrolet was humped and looked inside and saw that it contained beer bottles.

7. **Kidnapping § 1.2; Rape § 18.2– kidnapping – facilitating commission of rape – assault with intent to rape – sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction for assault with intent to commit rape and kidnapping by removing and restraining the victim "for the purpose of facilitating the commission of the felony of rape" where it tended to show that a white male removed the seven year old victim from a bowling alley, took her by car to a dirt road and "hurt" her; defendant had been to the bowling alley a short time before the victim disappeared; both defendant and his car matched descriptions given by the victim to the police; defendant had type O blood and the victim had type A blood; type A blood was found on the seat of defendant's automobile, and tests on trousers taken from defendant at the time of his arrest revealed the presence of semen and a group A substance; expert medical witnesses testified that there was a laceration between the victim's rectum and vagina; and a medical expert stated his opinion that "something had been inserted into the vagina beyond the hymenal ring."

8. **Criminal Law § 128.2– improper question – motion for mistrial – objection sustained – jury instructed**

It was not error for the court to deny defendant's motion for mistrial on the ground of improper questioning by the prosecutor where the court sustained defendant's objection and instructed the jury to disregard the prosecutor's question and its implication.

9.  **Kidnapping § 2– sentence of life imprisonment – absence of findings on miti-
    gating circumstances – jury verdict finding defendant guilty of assault with
    intent to rape**

    The trial court properly sentenced defendant to life imprisonment for
    kidnapping without making findings of fact concerning the mitigating cir-
    cumstances as to whether the victim "was released by the defendant in a
    safe place *and* had not been sexually assaulted or seriously injured," G.S.
    14-39(b), where charges of kidnapping and assault with intent to commit
    rape were submitted to the jury, the jury found defendant guilty of both
    charges, and the nonexistence of the mitigating factors of G.S. 14-39(b) was
    thus already established beyond a reasonable doubt.

10. **Criminal Law § 138.7– severity of sentences – no showing defendant punished
    for pleading not guilty**

    Presentence remarks made by the trial judge concerning defendant's
    plea of not guilty, while not approved, were made in the context of evaluat-
    ing the worth of our jury system and did not show that defendant was more
    severely punished for kidnapping and assault with intent to commit rape
    because he exercised his constitutional right to a trial by jury.

    Justice BROCK did not participate in the consideration or decision of this
    case.

APPEAL by defendant from the judgment of *Kirby, J.*, en-
tered at the 17 September 1979 Criminal Session of GASTON
Superior Court.

Defendant was charged in indictments proper in form with
the kidnapping and first-degree rape of Melissa Smith. He en-
tered a plea of not guilty to each charge.

Evidence for the State tended to show the following:

On the evening of 7 April 1979, Mr. and Mrs. Walter Smith
and their seven-year-old daughter, Melissa, went to the Major
League Bowling Lanes in Gastonia. After eating at the snack
bar, Mr. and Mrs. Smith began to bowl. They gave Melissa
money with which to play one of the game machines located in
the building. At about 8:15 p.m., Mr. Smith went to look for
Melissa but could not find her. A search of the building and
grounds was unsuccessful, and the police were called. Around
11:00 p.m., Melissa was found in the parking lot of a Volkswagen
dealer, located next door to the bowling alley. Several witnesses
testified that she had a bruised face at that time.

Melissa was taken to Gastonia Memorial Hospital for an
examination. Dr. Clifford Galloway, the physician who treated
Melissa, testified that the victim had a laceration about three

or four centimeters long between her vagina and rectum, and that she was bleeding in that area. Dr. Robert H. Ogden, a gynecologist who also examined Melissa at the hospital, testified that in his opinion, something had been inserted into the vagina.

Melissa testified that a man with blondish-red hair took her to a gas station. The man drove a "bluish" car with torn black seats. She stated that the man took her to a dirt road and hurt her. Melissa identified defendant as the man who had abducted her.

Based on information which Melissa gave to him that night, Officer Rodney Parham questioned several employees of the bowling alley and determined that another employee, the defendant, matched the description given by Melissa of her abductor. Officer Parham learned defendant's name, that he had been seen at the bowling alley shortly before Melissa's disappearance, and that he drove a Chevrolet automobile matching the description Melissa had given. Officer Parham also discovered that defendant resided at the Cardinal Motel. Officer Parham and Officer James Carter went to the motel and observed a 1967 Chevrolet Impala in the parking lot. A Police Information Network (P.I.N.) report indicated that the car was registered in defendant's name. Several officers then set up a surveillance of the car. At approximately 6:00 a.m. on 8 April 1979, defendant walked from his motel room to the Chevrolet and then returned to his room.

Shortly thereafter, defendant was taken to the police station and arrested. The automobile and motel room were searched pursuant to search warrants, and several items secured in the searches were introduced into evidence.

Defendant testified in his own behalf and introduced evidence tending to show that he had gone to the bowling alley around 7:00 p.m. on 7 April 1979. He had been drinking earlier. He testified that he talked briefly with some of the other employees and left around 8:00. He returned to his motel residence and went to bed. He did not see the Smiths or Melissa at the bowling alley and denied ever having committed a sexual assault of any type.

The jury returned a verdict of guilty of assault with intent to commit rape and of kidnapping. Defendant was sentenced to fifteen years imprisonment for the conviction of assault with intent to commit rape and to life imprisonment for the kidnapping charge. The sentences were made to run concurrently. Defendant appealed pursuant to G.S. 7A-27 on the kidnapping charge, and on 7 May 1980 we allowed his motion to bypass the Court of Appeals on the charge of assault with intent to commit rape.

Other facts pertinent to this appeal will be set out in the opinion.

*Rufus L. Edmisten, Attorney General, by Evelyn M. Coman, Associate Attorney, for the State.*

*R.C. Cloninger, Jr., Assistant Public Defender, for defendant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial judge's denial of his motions to suppress evidence obtained from defendant's motel room and automobile pursuant to separate search warrants. Defendant argues that the affidavits upon which the search warrants were issued did not contain sufficient facts or circumstances to support a finding of probable cause by the magistrate.

The affidavit upon which the warrant to search defendant's motel room was issued reads as follows:

That on 4/7/79 Melissa T. Smith was kidnapped from the Major League Bowling Lanes. This incident was reported to the Gastonia City Police at approximately 8:48 p.m. Around 11 p.m. on this same night, 4/7/79, Melissa T. Smith was seen walking in the vicinity of the Major League Lanes by her parents.

Melissa was taken to the Gaston Memorial Hospital and examined. The examination revealed that Melissa T. Smith had been sexually assaulted. While at the hospital, Melissa Smith described the person that took her from the Major League Lanes as having red curly hair, white, about 6 ft. tall and slender. She described the car in which she was

riding as blue with two humps on the back. She also states the car had two doors, big, and a black interior. The interior, she states was torn up. Victim also states she saw brown beer bottles in the car.

A 1967 Chevy blue/green in color was observed at 2:30 a.m. on 4/8/79 at the Cardinal Motel, Lowell, N.C. by Sgt. Carter and Officer Parham. The car is a 2 door 1967 blue/green Chevy with a long trunk which rises up on each side. On closer observation the interior of the car was observed. The car has a black interior and the front seat is torn up. The car is registered to Ricky Allen Bright according to the PIN network. Ricky Allen Bright is registered in room 42 of the Cardinal Motel in Lowell, N.C. / / / / / / / / /

4/8/79

/ / / / / s/ SERGEANT J.R. CARTER / / / / /

/ / / / / s/ Gastonia Police Dept. / / / / /

s/ J.O. ELLINGTON (Magistrate)

The 1973 General Assembly enacted G.S. 15A-245 which declared the basis for issuance of a search warrant and set forth the duties of the issuing official. That statute provides:

> *Basis for issuance of a search warrant; duty of the issuing official.* — (a) Before acting on the application, the issuing official may examine on oath the applicant or any other person who may possess pertinent information, but information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official.
>
> (b) If the issuing official finds that the application meets the requirements of this Article and finds there is probable cause to believe that the search will discover items specified in the application which are subject to seizure under G.S. 15A-242, he must issue a search warrant in accordance with the requirements of this Article. The issuing official must retain a copy of the warrant and war-

rant application and must promptly file them with the clerk. If he does not so find, the official must deny the application.

A search warrant cannot be issued upon affidavits which are purely conclusory and which do not state underlying circumstances upon which the affiant's belief of probable cause is founded. Further, there must be facts or circumstances in the affidavit which implicate the premises to be searched. In other words, the affidavit must furnish reasonable cause to believe that the search will reveal the presence of the articles sought on the premises described in the application for the warrant and that such objects will aid in the apprehension or conviction of the offender. *State v. Edwards,* 286 N.C. 162, 209 S.E. 2d 758 (1974); *State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 752 (1972); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied,* 414 U.S. 874 (1973).

[1] The affidavit upon which the warrant to search defendant's motel room was issued contains facts from which the magistrate could form a reasonable belief that the charged crime had been committed by a slender white man about six feet tall who had red curly hair. The affidavit would also support a reasonable belief that the 1967 Chevrolet registered in defendant's name and parked in front of the Cardinal Motel in Lowell, North Carolina, was the vehicle in which the victim was assaulted. However, there was only a conclusory statement that defendant was registered in the motel. There was no information or circumstances set forth in the affidavit or which was recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official in any way indicating that the defendant was the person described in the affidavit. Therefore, it cannot be inferred from the affidavit that defendant was the person who committed the charged crime. It follows that there was nothing to support a belief that the articles sought would be in his motel room or would aid in the apprehension or conviction of the offender. We, therefore, hold that the affidavit upon which the search warrant for defendant's motel room was issued was fatally defective. However, under the facts of this case, we do not believe that the evidence admitted as the result of the search of defendant's motel room was sufficiently prejudicial to warrant a new trial.

There was plenary evidence before the jury that the charged crime had been committed. On the same night that the crime was committed, the seven-year-old victim gave police officers a description of her assailant. The officers questioned employees of the bowling alley from which the child was abducted and determined that defendant matched this description. The officers' investigation also disclosed that defendant had been seen at the bowling alley shortly before Melissa disappeared. The victim on the same night gave the police officers a detailed description of the automobile in which she was transported. After ascertaining that defendant lived at the Cardinal Motel in Lowell, North Carolina, the officers proceeded to that place where they observed a 1967 Chevrolet automobile which matched the exterior and interior descriptions furnished by the victim. They then determined through the Police Information Network that this automobile was registered in defendant's name. A surveillance of the motel and automobile was arranged and in the early morning hours of 8 April 1979 the officers observed defendant as he went to his car and returned to the motel. Shortly thereafter, he was arrested. The victim made a positive in-court identification of defendant as her assailant. There was expert testimony tending to show that defendant's blood-type was O and that the victim's blood-type was A. A piece of cloth taken from the seat of the Chevrolet automobile was tested, and the test disclosed the presence of blood-type A. The expert examination of trousers taken from defendant at the time of his arrest revealed semen and the presence of a group A substance. None of the articles taken pursuant to the challenged search warrant revealed any probative evidentiary matter except the blanket. The blanket revealed the presence of human blood of the same type as that of the victim. On cross-examination the expert witness testified that type A blood is a common blood-type, occurring among about forty percent of the world's population. He testified that he found two blood stains on the blanket, but he could not determine the age of the stains or even whether the two stains were placed on the blanket at the same time.

In *State v. Heard and Jones,* 285 N.C. 167, 203 S.E. 2d 826 (1974), we were faced with the question of whether the admission of certain constitutionally barred evidence was prejudicial. There we stated the following rule:

State v. Bright

We recognize that all Federal Constitutional errors are not prejudicial, and under the facts of a particular case, they may be determined to be harmless, so as not to require an automatic reversal upon conviction. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Nevertheless, before a court can find a constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt. *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056; *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824; *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229; *State v. Cox* and *State v. Ward* and *State v. Gary*, 281 N.C. 275, 188 S.E. 2d 356; *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858; *State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399; *State v. Brinson*, 277 N.C. 286, 177 S.E. 2d 398.

*Id.* at 172, 203 S.E. 2d at 829.

The 1977 General Assembly codified this rule by the enactment of G.S. 15A-1443(b) which provides:

(b) A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

We conclude that the evidence obtained from the motel room was of little probative value and was at most cumulative since type A blood stains were found in the automobile, the place where, according to all the evidence, the assault occurred. We, therefore, hold that the erroneous admission of the evidence obtained by a search of defendant's motel room was harmless error beyond a reasonable doubt.

[2] The affidavit submitted in support of the issuance of a warrant to search defendant's automobile provides:

On April 7, 1979 Melissa T. Smith was reported missing from the Major League Bowling Lanes on Wilkinson Blvd. in Gastonia, N.C. about 8:48 p.m. by her parents.

At 11:00 p.m. 4-7-79 the victim, Melissa Smith wandered back to Major League Bowling Lanes by herself.

Officer Parham of the Gastonia City Police was contacted and met the victim and her parents at City Hall. Two other people accompanied them. At City Hall Officer Parham questioned victim and got name from her.

Victim described her assailant as a white male with red hair, slender, and wearing green pants. She stated the car in which she rode was blue, two doors, black interior, and big. She also indicated the interior was torn up. The victim stated there was a brown beer bottle in the car and that her assailant had been drinking. Sgt. Carter and Officer Parham questioned the managers of Major League Bowling Lanes about the incident on 4-8-79 after the victim had been found. Sgt. Carter talked to Max Bumgardner about 2:05 a.m. at Major League Bowling Lanes. Max stated he talked to Lee Gardner who stated Ricky was in the Bowling Alley on 4-7-79.

Officer Parham talked to William Joseph Costner at Major League Lanes at approximately 2:05 a.m. On the basis of information received from Max Bumgardner who was questioned at the same time William Costner was asked to call Mike Gayette, manager of Major League Lanes. Mike gave Officer Parham the name of a Ricky Bright. He stated that Ricky Bright lived at Cardinal Motel but he didn't know the room number. He also stated Ricky drove a blue 1967 Chevrolet.

Officer Parham and Sgt. Carter went to the Cardinal Motel at 2:30 a.m. and saw a blue-green 1967 Chevy, 2 door, N.C. Lic #RFS813 in front of unit 42 of Cardinal Motel. License checked through PIN and came back to Ricky Allen Bright. Capt. D.M. Roystor was then called and a surveillance of car was set up at about 3 a.m. After surveillance set up it was at this point the victim was questioned at Hospital. It was at this point that the victim described the car being blue, black interior, with two humps on the rear, on each one, said it was old and big with the interior torn up. Stated male was 6 ft., red curly hair, and slender with green pants on.

At approximately 6 a.m., 4-8-79, Sgt. Carter and Officer Parham returned to the Cardinal Motel and observed car. Officer observed that gas tank was leaking gas. Also saw

limb stuck under car in area of gas tank. Officer Parham looked in driver's side of car and saw front seat was torn and a blanket folded in the back seat. Sgt. Carter observed the seat torn and the blanket. There was nothing hanging from the rear view mirror which Officer Parham asked victim about earlier. Victim had stated there was nothing hanging from the rear view mirror.

4-8-79

/ / / / s/ RODNEY PARHAM / / / / /

s/ J.O. ELLINGTON (Magistrate) 4/8/79

Applying the legal principles above set forth, we conclude that the affidavit upon which the warrant to search defendant's automobile was issued contained sufficient facts and circumstances to support a finding by the magistrate that there was reasonable cause to believe that the search would reveal the presence of the articles sought and that such objects would aid in the apprehension or conviction of the offender. We therefore hold that the trial judge correctly denied defendant's motion to suppress the items seized from defendant's automobile.

[3] Defendant argues that the trial court erred by asking a series of leading questions of the victim during the *voir dire* hearing on defendant's motion to suppress identification testimony. Defendant maintains that the judge's questions were highly suggestive and, in fact, indicated bias on the part of the court. He concedes that the challenged questioning took place out of the hearing of the jury and recognizes the long line of cases holding that G.S. 15A-1222 is not intended to apply when the jury is not present during the questioning. Nevertheless, defendant submits that the judge's questioning impaired defendant's opportunity for a full and fair cross-examination of the witness.

It is well settled that a child may be asked leading questions, particularly when the inquiry concerns "delicate matters of a sexual nature." *State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978). In addition, the trial court may question a witness for the purpose of clarifying his testimony. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 209 (1974). Here the trial judge's inquiries were well within the above-stated rules. Furthermore, there is no

indication in this record that defendant was restricted in his cross-examination of the victim.

[4] By his seventh assignment of error, defendant contends that the court erred in admitting into evidence the victim's in-court identification of defendant on the grounds that the photographic lineup identification procedures were impermissibly suggestive. Upon defendant's request, the trial court conducted a *voir dire* hearing to determine the admissibility of the in-court identification.

In determining whether a pretrial lineup is impermissibly suggestive, giving rise to a substantial likelihood of irreparable misidentification, the court considers the following factors in making its findings: (1) opportunity of the witness to view at the time of the alleged act; (2) degree of attention; (3) accuracy of the witness's description; (4) level of certainty displayed in the act of identifying; (5) time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972). If the findings of the trial court are supported by competent evidence, they are binding on the appellate courts. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974).

The trial court here found, among other things,

That the witness was in the presence of her abductor for approximately two hours and shortly after being released gave the police a description of her abductor which was consistent with her testimony;

* * *

That there was a photographic display consisting of eight photographs with substantially similar physical characteristics wearing glasses, curly hair, and basically the same facial features, all of the same general photographic quality, black and white, made by the police mug-shot camera and identified only by a number in the upper left-hand corner, each photograph representing a frontal view; and that Melissa Smith selected the photograph of the defendant as her abductor.

The trial court then concluded "that the pretrial identification procedure was not unnecessarily suggestive and conducive to irreparable mistaken identification as to violate defendant's

rights to due process." The judge made no determination as to whether the witness's in-court identification was of independent origin. However, assuming arguendo that it was *not* independent of the pretrial procedures, the trial court found the pretrial lineup to be constitutionally sound. *A fortiori*, then, the in-court identification could not be tainted by the lineup. The findings of the court here are supported by ample evidence and are conclusive on this Court. We therefore hold that the trial court correctly denied defendant's motion to suppress the witness's in-court identification of defendant.

**[5]** Defendant next challenges the court's ruling which permitted the examining physician to give an opinion regarding the cause of several bruises on Melissa's face. Dr. Clifford Calloway, a physician who treated Melissa at the emergency room at Gaston Memorial Hospital, was asked if he had an opinion "as to what caused that particular bruise." Dr. Calloway replied that he had an opinion and that "it looked as though that pattern could have been made by fingers." Defendant contends that this was mere surmise on the part of Dr. Calloway.

It is well settled that an expert may give an opinion regarding what caused a particular condition, including the nature of the instrument producing a particular injury, when he bases his opinion on facts that are within his knowledge. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976); *see generally* 1 Stansbury's North Carolina Evidence, §§ 135, 136 (Brandis Rev. 1973). This assignment is overruled.

**[6]** Defendant assigns as error the denial of his motion to suppress evidence obtained as a result of his arrest. Defendant maintains that there was no probable cause for the arrest and thus any evidence obtained as a result of the illegal arrest must be suppressed.

An arrest is constitutionally valid if made upon probable cause. *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973). The existence of probable cause depends upon "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 13 L.Ed. 2d 142, 85 S.Ct. 223 (1964); *State v. Streeter, supra*.

Upon defendant's motion to suppress evidence seized as a result of defendant's arrest, the court conducted a *voir dire* hearing. Officer Parham testified that Melissa described her assailant as a white, slim male with reddish brown hair. She described the automobile which had transported her as big, blue, old, "with two humps on the back." There were beer bottles in the back. Upon inquiry at the bowling alley, the officer learned that defendant matched the description given by Melissa and that he had been seen at the bowling alley prior to her disappearance. Officer Parham also learned that defendant lived at the Cardinal Motel and drove a 1967 Chevrolet, matching generally the description which Melissa had given. At the motel, the officers saw a blue 1967 Chevrolet which, according to the Police Information Network report, was registered to defendant. The motel manager confirmed the fact that defendant lived at the motel and was registered in Room 42. Before making the arrest, the officers had an opportunity to observe defendant and to note that he matched the description given by Melissa of her assailant. The officers looked inside the automobile and saw that it contained beer bottles. They also noted that the car was humped. Shortly afterwards, the officers arrested defendant.

We hold that the facts and circumstances known to the arresting officers at the time they arrested defendant were more than ample to support a finding that there was probable cause to arrest defendant. That being so, the arrest was not illegal; and evidence seized pursuant to the valid arrest was not tainted by an unlawful arrest.

Even so, defendant contends that the court erred in failing to make findings of fact at the conclusion of the *voir dire*. We have held, however, that such a failure to find facts is not fatal where, as here, the defendant offered no evidence on *voir dire*, the court's ruling is supported by competent evidence, and the defendant can show no prejudice from the failure to make the findings. *State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741 (1967). This assignment is overruled.

[7] Defendant next assigns as error the failure of the court to dismiss for insufficiency of the evidence. He contends that the victim of the alleged offenses never testified regarding the manner in which defendant assaulted her. She merely stated,

"He hurt me. He smacked me in the face." Defendant thus maintains that there was insufficient evidence to show that he assaulted Melissa with the intent to force her to have sexual relations, an essential element of the offense of assault with intent to commit rape. He also contends, for much the same reason, that the evidence was not sufficient to show that he had "removed and restrained" Melissa "for the purpose of facilitating the commission of the felony of rape."

Upon defendant's motion to dismiss, the evidence is considered in the light most favorable to the State, "and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. McKinney*, 288 N.C. 113, 117, 215 S.E. 2d 578, 581 (1975). If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for [dismissal] should be allowed." *State v. Cutler*, 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). The test of whether the evidence is sufficient to withstand a motion to dismiss is whether a reasonable inference of defendant's guilt may be drawn from the evidence. *Id.* The test is the same whether the evidence is circumstantial or direct. *Id.*

In the instant case, Melissa testified that she had been "hurt." Several witnesses testified regarding the circumstances surrounding her disappearance and the apprehension of defendant pursuant to her description of him and his automobile. Dr. Robert H. Ogden, the gynecologist who examined Melissa in the emergency room, testified that there was a "laceration between her rectum and vagina," and, in his opinion, "something had been inserted into the vagina beyond the hymenal ring." Dr. Clifford K. Calloway, the emergency room physician who treated Melissa, also testified that "Melissa's bottom was torn between the rectum and the vagina."

Theodore Yeshion, an expert in the field of forensic serology, testified that lab tests performed on blood samples taken from defendant indicated that his blood type was O, while samples taken from Melissa indicated she was type A. Mr. Yeshion testified that he performed tests on a cloth cutting from the seat of the automobile and discovered the presence of type A blood. He further stated that he examined a stain on the pants

taken from defendant at the time of his arrest and found a secretion that "had to come from a group A individual."

We do not deem it necessary to relate once again the circumstances surrounding Melissa's disappearance, her description of her assailant and his automobile, defendant's subsequent arrest, and the evidence adduced at trial regarding the presence of blood and semen stains found on certain items belonging to defendant. Suffice it to say that, taken in the light most favorable to the State, evidence of these facts together with the expert medical testimony of the treating physicians, is sufficient to permit a jury to find that the offenses charged had been committed and that defendant committed them. We so hold.

[8] By his next assignment, defendant contends that the court erred in failing to grant his motion for mistrial on grounds of improper questioning by the prosecutor. On cross-examination, the district attorney asked defendant whether, at the time of his arrest, he had denied having been with Melissa the night before. Defense counsel objected and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard the question and its implications.

"Motions for a mistrial in non-capital cases are addressed to the discretion of the trial judge and his ruling thereon will not be disturbed absent a showing of gross abuse of discretion." *State v. Love,* 296 N.C. 194, 204, 250 S.E. 2d 220, 227 (1978). Furthermore, we have held that it is not error for the trial court to deny a defendant's motion for mistrial for improper questioning by the district attorney where the court sustained the defendant's objection and instructed the jury not to consider the question. *Id.; State v. Self,* 280 N.C. 665, 187 S.E. 2d 93 (1972). We therefore hold that the court's action sustaining the objection and instructing the jury to disregard the question cured any impropriety in the district attorney's question. There was no abuse of discretion in the denial of defendant's motion for mistrial.

[9] Defendant contends that the court erred in sentencing him to life imprisonment for kidnapping without making findings of fact concerning the absence or presence of mitigating circumstances.

G.S. 14-39(b) provides:

(b) Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than 25 years nor more than life. If the person kidnapped, as defined in subsection (a), was released by the defendant in a safe place *and* had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court. [Emphasis added.]

In *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978), Justice Exum speaking for the Court stated the principles of law which control this assignment of error. We quote from that opinion:

Normally a jury need only determine whether a defendant has committed the substantive offense of kidnapping as defined in G.S. 14-39(a). The factors set forth in subsection (b) relate only to sentencing; therefore, their existence or non-existence should properly be determined by the trial judge.

The judge may make such a determination from evidence adduced at the trial of the kidnapping case itself or at the sentencing hearing provided for in G.S. 15A-1334 following the trial, or at both proceedings. If at either or both proceedings evidence of the existence of the mitigating factors has been presented, the judge must consider this and all other evidence bearing on the question. If the judge is satisfied by a preponderance of the evidence, the burden being upon the defendant to so satisfy him, that the kidnapping victim was released in a safe place and was neither sexually assaulted nor seriously injured, he shall so find and may not then impose a sentence on the kidnapping conviction of more than 25 years or a fine of up to $10,000, or both. If the judge is not so satisfied, he must so state on the record in which case he may impose a sentence of not less than 25 years nor more than life imprisonment. If no evidence either at trial or at the sentencing hearing is adduced tending to show the existence of the mitigating factors then the judge, without making findings, may pro-

ceed to impose a sentence of not less than 25 years nor more than life imprisonment.

\* \* \*

We note one exception to the procedures we have set out above, and it applies to this case. When, as here, the question of the existence of mitigating factors has, in effect, been submitted to the jury in the form of separate criminal charges tried jointly with the kidnapping case, and the jury finds defendant guilty, there is no need for the judge to make separate findings. The nonexistence of mitigating factors will already have been determined beyond a reasonable doubt. Since the jury made such a determination in this case, the life sentences imposed upon defendant's conviction of the kidnapping charges were proper.

*Id.* at 669-670, 679, 249 S.E. 2d at 719, 725.

The circumstances which mitigate the punishment for kidnapping are that the kidnapped person must be released by the defendant "in a safe place *and* had not been sexually assaulted or seriously injured." G.S. 14-39(b). [Emphasis added.] .

In instant case, the trial judge submitted kidnapping and the separate crime of assault with intent to commit rape. The jury found defendant guilty on both counts thereby declaring beyond a reasonable doubt that one of the threefold requirements set forth in G.S. 14-39(b) had not been met. We, therefore, hold that the trial judge properly imposed the life sentence upon verdict of guilty of kidnapping.

[10]   Defendant finally. contends that the trial judge erred by considering irrelevant and improper matter in determining the severity of the sentence imposed.

After the verdicts were returned by the jury and before imposing sentences, the trial judge in essence observed that there was rather overwhelming evidence against defendant. He then commented on the dilemma facing jurors and defense counsel under such circumstances and concluded that there was no better system of determining one's guilt or innocence than our jury system. The trial judge further stated that he was going to accept the jury verdict and pronounce a sentence

based upon that verdict. He then proceeded to relate to defend-
ant the adverse effects of defendant's actions upon his family
and to again review the evidence upon which the jury verdicts
were based.

Defendant relies heavily on *State v. Swinney*, 271 N.C. 130,
155 S.E. 2d 545 (1967), and *State v. Boone*, 293 N.C. 702, 239 S.E.
2d 459 (1977). In *Swinney* defendant entered a plea of nolo
contendre to voluntary manslaughter which was accepted by
the court. The evidence heard by the court tended to show that
after a party in the home of defendant and her husband where
there was drinking and dancing, the defendant's husband
attacked her and she shot and killed him. The trial judge by his
cross-examination of the defendant and statements made by
him in open court clearly indicated that he was punishing
defendant, not for the killing, but for her part in the party. This
court vacated the judgment sentencing defendant to imprison-
ment for a period of five to seven years and remanded the cause
for proper judgment.

Instant case is easily distinguishable from *Swinney* in that
here it clearly appears that defendant was sentenced upon the
jury verdicts and the evidence upon which the verdicts were
based.

In *Boone* the Court vacated the judgment entered and re-
manded for proper sentencing because the trial judge in open
court stated that the sentence was based, in part, on defend-
ant's action in exercising his constitutional right to plead not
guilty and demand a jury trial.

The reasoning in *Boone* is not applicable to the facts before
us. Statements made concerning defendant's plea of not guilty
were made in the context of evaluating the worth of our jury
system. We cannot say that the statements made by the trial
judge in instant case showed that the severity of the sentence
imposed related to the defendant's plea of not guilty.

The general rule is that a judgment is presumed to be valid
and will not be disturbed absent a showing that the trial judge
abused his discretion. When the validity of a judgment is chal-
lenged, the burden is on the defendant to show error amounting
to a denial of some substantial right. *State v. Pope*, 257 N.C. 326,
126 S.E. 2d 126 (1962).

Although we do not approve of the judge's extended pre-sentence remarks, we cannot, under the facts of this case, say that defendant was prejudiced or that defendant was more severely punished because he exercised his constitutional right to trial by jury. By its verdict, the jury found that defendant kidnapped a seven-year-old child, attempted to rape her thereby inflicting serious injury upon her person. In our opinion, the evidence in this case justified the sentence imposed.

Our careful consideration of all defendant's assignments of error and this entire record discloses no error warranting that the verdicts returned and the judgment entered be disturbed.

No Error.

Justice BROCK did not participate in the consideration or decision of this case.