NO. COA13-1128

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

    v.

MAX TRACY EARLS,
    Defendant.

Catawba County
Nos. 11CRS004534-36
       11CRS053827-30

Appeal by defendant from Judgments entered on or about 18 April 2013 by Judge Richard D. Boner in Superior Court, Catawba County. Heard in the Court of Appeals 6 March 2014.

> *Attorney General Roy A. Cooper III, by Special Deputy Attorney General Amar Majmundar, for the State.*
>
> *M. Alexander Charns, for defendant-appellant.*

STROUD, Judge.

Max Earls ("defendant") appeals from judgments entered after a Catawba County jury found him guilty of three counts of taking indecent liberties with a child, two counts of incest, one count of statutory rape, and one count of rape of a child by an adult. We conclude that there was no error at defendant's trial or sentencing.

I.   Background

On or about 11 July 2011, defendant was indicted on three counts of taking indecent liberties with a child, two counts of incest, one count of statutory rape, and one count of rape of a child by an adult. Defendant pled not guilty and was tried by jury the week of 15 April 2013.

At trial, the State's evidence tended to show that in mid-to-late 2010, defendant was living with his wife and three daughters, Kate, Ellen, and Carol,[1] in Catawba County, NC. At the time, Kate was 13, Ellen was 11, and Carol was approximately 2. Kate and Ellen both testified at trial. Kate testified that defendant had sexually abused her by forcing her to engage in both vaginal and anal intercourse. Ellen testified that defendant made her take her clothes off and got into bed naked with her. She could not say aloud what he did to her after that, but while she was on the witness stand the prosecutor had her write down what happened. Ellen wrote that defendant had put his penis in her vagina. After the State rested, defendant presented his own evidence and testified on his own behalf. He denied that he ever touched his daughters inappropriately and claimed that they made up the story.

---

[1] To protect the identities of the juveniles and for ease of reading we will refer to them by pseudonym.

The jury found defendant guilty of all charges. The trial court then consolidated the charges into two judgments and sentenced defendant to 300 to 369 months imprisonment with a consecutive sentence of 240 to 297 months imprisonment. Defendant filed timely written notice of appeal on 22 April 2013.

## II.  Guilt Phase

Defendant argues that the trial court erred in four ways during the guilt phase of his trial:  (1) that the trial court erred in allowing the prosecution to ask the 14-year-old Ellen leading questions, which violated his rights under the Sixth and Fourteenth Amendments; (2) that the trial court erred by allowing the prosecutor to read Ellen's written statement to the jury; (3) that the prosecutor improperly vouched for Ellen's credibility by reading her statement to the jury; and (4) that Ellen was not competent to testify. We conclude that all of defendant's arguments are meritless and that several of them have not been properly preserved.

## A.  Leading Questions

Defendant did object to one of the prosecutor's leading questions of Ellen on the basis of leading.  We review the trial court's decision to overrule this objection for an abuse of

discretion. *See State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) ("Rulings by the trial judge on the use of leading questions are discretionary and reversible only for an abuse of discretion.").

The prosecutor and Ellen had the following exchange leading to defendant's objection:

> [Prosecutor]: I'm going to show you what's marked as State's Exhibit 6. I'm going to ask you, when I was questioning you earlier and I asked you to write down what your father did to you, is this your writing?
>
> [Ellen]: Yes.
>
> [Prosecutor]: Okay. And you wrote that?
>
> [Ellen]: Yes.
>
> [Prosecutor]: And you wrote that while you were sitting on the witness stand?
>
> [Ellen]: Yes.
>
> [Prosecutor]: And this happened to you, is that true?
>
> [Ellen]: Yes.
>
> [Prosecutor]: And your father did this to you, is that true?
>
> [Defense Counsel]: Objection to the leading.
>
> THE COURT: The objection is overruled.
>
> [Prosecutor]: Is that true?
>
> [Ellen]: Yes.

This question was the only one to which defendant objected. Any other objection to the prosecutor's questions has not been preserved. N.C.R. App. P. 10(a)(1). The control of witness examination is discretionary, *Riddick*, 315 N.C. at 756, 340 S.E.2d at 59, and not reviewable for plain error, *see State v. Norton*, 213 N.C. App. 75, 81, 712 S.E.2d 387, 391 (2011) (noting that "discretionary decisions of the trial court are not subject to plain error review.").

> The general rule is that leading questions should be asked only on cross-examination. However, a trial judge must exercise reasonable control over the mode of interrogating witnesses. Leading questions should be permitted on direct examination when necessary to develop the witness's testimony.

*Riddick*, 315 N.C. at 755, 340 S.E.2d at 59 (citations, quotation marks, and ellipses omitted).

Here, Ellen testified in response to a non-leading question that something bad happened between her and defendant. She testified that she was watching TV in her sister's basement bedroom when defendant came in and sat down on the bed next to her. She stated that he told her to undress and took his clothes off. The prosecutor asked what happened next, but Ellen did not respond. She had already been crying at several points

throughout her testimony and it is clear from the transcript that she refused to look at anyone in the eye or answer questions about what happened after her father got into the bed with her naked.

In response, the prosecutor began asking her more leading questions, encouraging her to tell the truth and to say what happened. She responded to various questions about the people with whom she had discussed what had happened, but would not say what defendant did to her. Out of the presence of the jury, the prosecutor attempted to refresh Ellen's recollection by having her read a prior written statement she had made, but Ellen refused to look at it. The trial court instructed Ellen to answer both the prosecutor's and the defense attorney's questions. The court also warned the prosecutor that if Ellen refused to answer questions on cross-examination, he would have to strike her testimony. When the jury returned, she continued not to respond to questions about what defendant did to her. While Ellen was still on the witness stand, the prosecutor had Ellen write down what defendant did to her. They then had the exchange discussed above.

> The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to

> lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth.

*State v. Greene*, 285 N.C. 482, 492-93, 206 S.E.2d 229, 236 (1974).

Here, the prosecutor was attempting to ask a 14-year-old witness explicit questions about her father's sexual conduct toward her. She was clearly very reluctant to testify about it in detail and out loud. The prosecutor repeatedly urged Ellen to tell the truth, regardless of what her answer would be. The prosecutor attempted to refresh her recollection with her prior statements, but she still refused to specify what defendant did to her. Leading questions were clearly necessary here to develop the witness's testimony. Given the facts of this case, we cannot say that the trial court abused its discretion in permitting the

prosecutor to ask Ellen leading questions. *See Riddick*, 315 N.C. at 756, 340 S.E.2d at 59.

Defendant also makes a brief argument that the prosecutor violated his right to confront his accuser under the Sixth and Fourteenth Amendments by asking Ellen leading questions. He cites no case holding that a trial court's decision to allow leading questions on direct examination implicates a criminal defendant's confrontation rights. Ellen testified in open court and defendant had a full and fair opportunity to cross-examine her, which he did. This argument is meritless.

B.    Reading to the Jury

Defendant next argues that it was error for the trial court to permit the prosecutor to read Ellen's in-court, written statement to the jury. The challenged statement was a one-line written statement about that which Ellen could not bring herself to say aloud: that defendant placed his penis in her vagina. It was made in court, before the jury, and defendant had an opportunity to cross-examine her about the statement, an opportunity he took advantage of. Other than a single reference— without a cite—to that which "Confrontation requires," he makes no argument that any rule of evidence, statute, or constitutional provision was violated by this manner of

presentation. Therefore, we have no legal basis upon which to review this alleged error. *See* N.C.R. App. P. 28(b)(6). It is not the role of this Court to craft defendant's arguments for him. *Viar v. North Carolina Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (stating that "[i]t is not the role of the appellate courts, . . . to create an appeal for an appellant").

C.    Vouching for Credibility of the Witness

Defendant further argues that the prosecutor vouched for Ellen's credibility by reading her in-court, written statement to the jury. The prosecutor never made any statement directly about Ellen's credibility. Defendant simply contends that the act of reading the statement itself was equivalent to vouching for her credibility. He did not object on this basis below and does not specifically argue on appeal that this alleged error would constitute plain error. Therefore, it has not been preserved for our review. *See State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) ("To have an alleged error reviewed under the plain error standard, the defendant must 'specifically and distinctly' contend that the alleged error constitutes plain error.").

D.    Ellen's Competency

Defendant does argue that the admission of Ellen's testimony constituted plain error because she was incompetent to testify. As defendant notes, "the competency of a witness is a matter which rests in the sound discretion of the trial judge in the light of his examination and observation of the particular witness." *State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987) (citation, quotation marks, and emphasis omitted). Defendant never raised the issue of Ellen's competency below and "discretionary decisions of the trial court are not subject to plain error review." *Norton*, 213 N.C. App. at 81, 712 S.E.2d at 391. Therefore, this alleged error has not been preserved for our review.

### III. Ineffective Assistance of Counsel

Defendant next argues that his trial counsel rendered ineffective assistance of counsel by not objecting to the introduction of a videotaped interview of Ellen.

> To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Ballance*, ___ N.C. App. ___, ___, 720 S.E.2d 856, 867 (2012) (citation and quotation marks omitted). Defendant cannot show that his trial counsel's performance fell below an objective standard of reasonableness or that the failure to object prejudiced him if the evidence to which he failed to object was admissible.

Here, the out-of-court videotaped statement was introduced to corroborate Ellen's testimony as a prior consistent statement and the trial court gave a limiting instruction to that effect. "A prior consistent statement may be admissible as non-hearsay even when it contains new or additional information when such information tends to strengthen or add credibility to the testimony which it corroborates. Out-of-court statements offered to corroborate a child's testimony regarding sexual abuse have been held to be non-hearsay." *State v. Treadway*, 208 N.C. App. 286, 290, 702 S.E.2d 335, 341 (2010) (citations and quotation marks omitted), *disc. rev. denied*, 365 N.C. 195, 710 S.E.2d 35 (2011). There is no colorable argument that this evidence was inadmissible and defendant makes none. Therefore, we hold that defendant has failed to show that he received ineffective assistance of counsel.

IV.  Sentencing Phase

Defendant next argues that the trial court violated his right to due process by quoting the Bible during sentencing.

> A sentence within the statutory limit will be presumed regular and valid. However, such a presumption is not conclusive. If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights.

*State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "When the validity of a judgment is challenged, the burden is on the defendant to show error amounting to a denial of some substantial right." *State v. Bright*, 301 N.C. 243, 261, 271 S.E.2d 368, 379-80 (1980).

The trial court heard arguments from both attorneys, but neither aggravating nor mitigating evidence was offered. The State asked for all sentences to run consecutively, while defendant asked for a single sentence. Defendant's only argument at the sentencing hearing was that it was a close case and that "he has been a caring father and husband and supportive." Before pronouncing its sentence, the trial court addressed defendant:

> Well, let me say this: I think children are a gift of God and I think God expects when he gives us these gifts that we will treat them as more precious than gold, that we

> will keep them safe from harm the best as we're able and nurture them and the child holds a special place in this world. In the 19th chapter of Matthew Jesus tells his disciples, suffer the little children, to come unto me, forbid them not: for such is the kingdom of heaven. And the law in North Carolina, and as it is in most states, treats sexual abuse of children as one of the most serious crimes a person can commit, and rightfully so, because the damage that's inflicted in these cases is incalculable. It's murder of the human spirit in a lot of ways. I'm going to enter a judgment in just a moment. But some day you're going to stand before another judge far greater than me and you're going to have to answer to him why you violated his law and I hope you're ready when that day comes.

Defendant correctly observes that taking into account the religious beliefs of either the trial judge or the defendant is an improper sentencing consideration. "Courts . . . cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it." *United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991). However, a trial court's religious references during sentencing only violate due process "where impermissible personal views expressed at sentencing were the basis of the sentence." *United States v. Traxler*, 477 F.3d 1243, 1249 (10th Cir. 2007), *cert. denied*, 552 U.S. 909, 169 L.Ed. 2d 186 (2007).

As the Fourth Circuit observed in *Bakker*, "[t]o a considerable extent a sentencing judge is the embodiment of public condemnation and social outrage. As the community's spokesperson, a judge can lecture a defendant as a lesson to that defendant and as a deterrent to others." *Bakker*, 925 F.2d at 740 (citation, quotation marks, and footnote omitted). In that case, the Fourth Circuit remanded for a new sentencing hearing because it was concerned "that the imposition of a lengthy prison term here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed." *Id.* at 741.

In *Arnett v. Jackson*, 393 F.3d 681 (6th Cir. 2005), *cert. denied*, 546 U.S. 886, 163 L.Ed. 2d 193 (2005), the Sixth Circuit addressed a similar set of circumstances to those here. In *Arnett*, an Ohio state trial court sentenced the defendant to a fifty-one year prison term for pandering obscenity and ten counts of rape of a child. 393 F.3d at 684. The victim in that case was the daughter of defendant's live-in girlfriend. *Id.* at 683. At the sentencing hearing, the trial court castigated defendant for his crimes, emphasizing the long-term trauma he inflicted on the victim. *Id.* at 683-84. The sentencing court also stated,

> that passage where I had the opportunity to look is Matthew 18:5, 6. "And whoso shall receive one such little child in my name, receiveth me. But, whoso shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck, and he were drowned in the depth of the sea."

*Id.* at 684. After quoting this passage from Matthew, the court pronounced its sentence. *Id.* Defendant appealed his sentence to the Ohio appellate courts. *Id.* The Ohio Court of Appeals vacated his sentence because of the trial court's comments. *Id.* The State appealed and the Ohio Supreme Court reversed the Court of Appeals, upholding his sentence. *Id.* After exhausting his direct appeals, the defendant filed a petition for writ of habeas corpus with the federal district court. *Id.* The federal district court found that the state courts had violated defendant's due process rights and ordered that he be released or resentenced. *Id.* at 685.

On appeal, the Sixth Circuit reversed the district court. *Id.* at 688. The appellate court concluded that

> There is nothing in the totality of the circumstances of Arnett's sentencing to indicate that the trial judge used the Bible as her "final source of authority," as found by the district court. Moreover, the Biblical principle of not harming children is fully consistent with Ohio's sentencing consideration to the same effect. If the trial judge had actually sentenced Arnett

> based upon a belief that God commanded that he be "drowned in the depth of the sea," we would expect the sentence imposed to be the maximum length possible. In reality, he was sentenced in the lower half of the sentencing range allowable under Ohio law.

*Id.* It accordingly held that the defendant's "due process rights were not violated by the judge's Biblical reference at sentencing." *Id.*

While the trial court here should not have referenced the Bible or divine judgment in sentencing, defendant cannot show that his rights were prejudiced in any way or that his sentence was based on the trial court's religious invocation. The trial court consolidated the convictions into two judgments: it consolidated the one conviction for rape of a child into the first judgment along with one count of indecent liberties and one count of incest; the remainder of the convictions were consolidated in the second judgment. The trial court sentenced defendant to 300 to 369 months imprisonment with a consecutive sentence of 240 to 297 months imprisonment. The most serious offense in the first judgment was rape of a child, which carries a 300 month mandatory minimum sentence, N.C. Gen. Stat. § 14-27.2A(b) (2009). The most serious offenses in the second judgment were Class B1 offenses. Defendant had a prior record level of 1. The presumptive range for a prior record level 1

offender convicted of a Class B1 felony was 192-240 months. Thus, the trial court sentenced defendant at the mandatory minimum for the first judgment and within the presumptive range for the second. *See* N.C. Gen. Stat. § 15A-1340.17 (2009).

The crimes of rape of a child and incest severely harm young children, often for the remainder of their lives. "[O]ur society has a long history of sternly punishing those people who hurt young children." *Arnett*, 393 F.3d at 687. The severe punishments imposed by our General Statutes for such crimes recognize this harm. The trial court's remarks similarly touched on this theme and were clearly aimed at lecturing defendant about the impact of his crimes on his daughters and on the community. In doing so, he acted as the "embodiment of public condemnation and social outrage." *Bakker*, 925 F.2d at 740.

"[W]e cannot, under the facts of this case, say that defendant was prejudiced or that defendant was more severely punished because" of the trial court's religious invocation at sentencing. *State v. Bright*, 301 N.C. 243, 262, 271 S.E.2d 368, 380 (1980).[2] "In our opinion, the evidence in this case justified

---

[2] *See also State v. Ledwell*, 171 N.C. App. 314, 321, 614 S.E.2d 562, 567 (2005) (holding that an error in sentencing was not prejudicial when defendant was sentenced in the presumptive range); *United States v. Salama*, 974 F.2d 520, 522 4th Cir. (1992) (holding that the trial court's improper statements

the sentence imposed." *Bright*, 301 N.C. at 262, 271 S.E.2d at 380. Nevertheless, we remind trial courts that "judges must take care to avoid using language that could give rise to an appearance that improper factors have played a role in the judge's decision-making process even when they have not." *State v. Tice*, 191 N.C. App. 506, 516, 664 S.E.2d 368, 375 (2008).

## V. Conclusion

For the foregoing reasons, we conclude that defendant has shown no prejudicial error at trial or sentencing and has failed to show that he received ineffective assistance of counsel.

NO ERROR.

Judges CALABRIA and DAVIS concur.

---

regarding the defendant's nationality did not constitute a due process violation where "any impropriety of the district court's remarks did not infect the sentence."), *cert. denied*, 507 U.S. 943, 122 L.Ed. 2d 727 (1993).