IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1092

Filed 7 January 2026

Buncombe County, Nos. 20CR090299-100, 20CR090300-100

STATE OF NORTH CAROLINA

v.

DEKALIA LEIGH SIMPSON, Defendant.

Appeal by Defendant from judgments entered 22 February 2024 by Judge Karen Eady-Williams in Buncombe County Superior Court. Heard in the Court of Appeals 14 August 2025.

*Attorney General Jeff Jackson, by Assistant Deputy Attorney General Marc D. Brunton, for the State.*

*Jason Christopher Yoder, for Defendant-Appellant.*

CARPENTER, Judge.

Dekalia Leigh Simpson ("Defendant") appeals from judgments entered after a jury found her guilty of two counts of carrying a concealed firearm. On appeal, Defendant argues the trial court erred by: (1) entering judgment on two counts of carrying a concealed weapon; (2) sentencing her to twenty-four months of probation; and (3) basing her sentence on an improper consideration. Because we discern error in part, we reverse and remand for resentencing.

## I. Factual & Procedural Background

On 5 June 2023, a Buncombe County grand jury indicted Defendant for: (1) one count of possession with intent to sell or deliver marijuana; (2) two counts of carrying of a concealed firearm; (3) one count of keeping and maintaining a vehicle for the keeping and selling of marijuana; (4) one count of possession of marijuana paraphernalia; and (5) one count of felony possession of marijuana. The State voluntarily dismissed the charge of possession with intent to sell or deliver marijuana, and Defendant's case proceeded to trial on 19 February 2024. The evidence tended to show the following.

Officers Steven Escobedo, Christopher Katt, and Patrick DeStefano, all with the Asheville Police Department, were assigned to work the Asheville Housing Authority (the "Housing Authority") properties. Their assignment involved working with property managers and residents about issues ranging from neighborly disputes to resident complaints about drug use and violence. Generally, when investigating a Housing Authority issue, the officers split up. When doing so, one officer would view live surveillance footage of the property in question from the Housing Authority's office and the other officers would investigate on scene.

On 27 October 2020, Officer Escobedo viewed live footage of the Klondyke apartment complex due to increased reports from the property manager and residents regarding drug use, drug sales, and violent crime. Most of the reported activity involved the basketball courts at the Klondyke apartment complex. While surveilling the basketball courts on 27 October, Officer Escobedo noticed a white Audi sedan in

the parking lot. Officer Escobedo observed two individuals in the vehicle passing back and forth what he believed to be a "marijuana cigar." Officer Escobedo also believed the two individuals were "hot boxing." Officer Escobedo relayed his observations to Officers Katt and DeStefano, who promptly arrived on scene and approached the vehicle.

As they approached the vehicle, Officers Katt and DeStefano detected the odor of marijuana and observed two female passengers passing a cigarette back and forth. Defendant was in the driver's seat and her juvenile sister was in the front passenger seat. Officer Katt approached the passenger side of the vehicle while Officer DeStefano approached the driver's side. The officers initiated a vehicle search based on the odor of marijuana. After asking Defendant and her sister to exit the vehicle, Officer DeStefano discovered a firearm in the front driver's side of the vehicle. Defendant initially told the officers that she had a concealed carry permit, but she did not have a permit.

Officer Escobedo testified it was protocol to detain all passengers of a vehicle after a weapon is observed inside the vehicle. Therefore, officers detained Defendant and her sister, and Officer Katt conducted a *Terry* frisk of Defendant. At this time, Defendant informed the officers about a second firearm in the vehicle inside a pink bag behind the driver's seat. After securing the two firearms, the officers continued to search the vehicle and discovered 123 grams of marijuana, approximately $10,480

in cash, and a digital scale. Based on the items seized from the vehicle, officers arrested Defendant and her sister.

At the close of evidence, Defendant moved to dismiss all charges for insufficient evidence. The trial court denied Defendant's motion. The jury found Defendant guilty of two counts of carrying a concealed firearm and not guilty of the remaining charges. During sentencing, defense counsel requested an unsupervised probation term and prayer for judgment continued ("PJC"), to which the trial court responded: "I hear your request . . . but I cannot ignore the facts of the case. Specifically, the amount of money, the guns, the vacuum-sealed item, whatever it was." The trial court further stated:

> I mean, if you look at it from the position I sit in, I've seen many of these cases over the course of many years. You have someone at night in a car with a large amount of cash, two weapons, one directly under her, vacuum-sealed something. What do you think that is?

After consolidating Defendant's two concealed weapons convictions, the trial court sentenced Defendant as follows: "[Defendant] shall receive a sentence of 30 days. That sentence will be suspended . . . for 24 months. She will be placed on probation for 24 months. She'll pay the costs of court in this matter, as well as a $100 fine." The trial court also said:

> If [Defendant has] not gotten in any trouble, has paid the supervision fees, maintains -- I want her to maintain employment or looking for work at all times -- then I will transfer probation from supervised to unsupervised after

> 12 months, but I have no concerns that she'll sail through
> this without any problems.

Finally, the trial court entered a civil judgment for $2,275 in legal fees. Defendant gave notice of appeal on 7 March 2024.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) entering judgment on two counts of carrying a concealed firearm; (2) sentencing Defendant to twenty-four months of probation; and (3) basing Defendant's sentence on an improper consideration.

## IV. Analysis

Defendant primarily argues the trial court erred by entering judgment on two counts of carrying a concealed firearm under section 14-269, arguing that an offense charged under the statute constitutes one unit of prosecution, notwithstanding the number concealed firearms, in accordance with *State v. Conley*, 374 N.C. 209, 839 S.E.2d 805 (2020). In addition, Defendant argues the trial court erred by sentencing her to twenty-four months of probation because it made no specific finding that a longer period of probation was necessary than the eighteen-month statutory maximum. Finally, Defendant contends the trial court erred by basing her sentence

on an improper consideration—conduct alleged in her indictment of which she was acquitted.

We review "[a]lleged statutory errors" and issues of statutory construction de novo on appeal. *State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011); *State v. Patterson*, 266 N.C. App. 567, 570, 831 S.E.2d 619, 622 (2019). " 'The extent to which a trial court imposed a sentence based upon an improper consideration is a question of law' " that we review de novo. *State v. Johnson*, 265 N.C. App. 85, 87, 827 S.E.2d 139, 141 (2019) (quoting *State v. Pinkerton*, 205 N.C. App. 490, 494, 697 S.E.2d 1, 4 (2010), *rev'd on other grounds*, 365 N.C. 6, 708 S.E.2d 72 (2011)). Under de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## A. Carrying a Concealed Firearm

First, Defendant argues the trial court erred by entering judgment on two counts of carrying a concealed firearm under section 14-269 because it should have arrested judgment on the second count. In support of her argument, Defendant contends an offense charged under section 14-269 constitutes "one unit of prosecution notwithstanding the number of firearms concealed by the person." Though we agree that an offense charged under section 14-269 constitutes one unit of prosecution notwithstanding the number of concealed firearms possessed during a single

instance, any error by the trial court was not prejudicial because it consolidated Defendant's two convictions.

The "question of whether to impose one or multiple punishments . . . is a quintessential example of a policy decision reserved for a legislative body." *Conley*, 374 N.C. at 215, 839 S.E.2d at 809. "In construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary legislative intent." *State v. Boykin*, 78 N.C. App. 572, 576–77, 337 S.E.2d 678, 681 (1985).

"Statutory language is either ambiguous or it is not." *Conley*, 374 N.C. at 216, 839 S.E.2d at 810. A "subjective belief as to the legislature's intent does not change the fact that there are two reasonable constructions . . . ." *Id.* at 216, 839 S.E.2d at 810. In cases of ambiguity, the rule of lenity "forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *Id.* at 577, 337 S.E.2d at 681 (cleaned up).

In *Conley*, the defendant was convicted of five counts of possession of a firearm on school grounds under section 14-269.2. 374 N.C. at 211, 839 S.E.2d at 807. Section 14-269.2 provides:

> It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, *any* gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school.

*Id.* at 212, 839 S.E.2d at 807 (emphasis in original) (quoting N.C. Gen. Stat. § 14-269.2(b) (2019)). The defendant's five convictions under section 14-269.2 stemmed

from the defendant possessing five firearms during a single instance on school grounds. *Id.* at 210, 839 S.E.2d at 806. The defendant challenged his convictions by arguing section 14-269.2 is ambiguous as to whether multiple convictions are permitted for the simultaneous possession of more than one firearm on a single occasion. *Id.* at 211–12, 839 S.E.2d at 807. On appeal, our Supreme Court explained:

> The crux of the dispute in this appeal centers around the use of the phrase "any gun" in the statute—namely, whether the statute's prohibition of possessing or carrying "any gun" on educational property means that separate punishments may be imposed for each gun possessed on a specific occasion or, alternatively, that only a single punishment may be imposed, regardless of the number of guns possessed.

*Id.* at 212, 839 S.E.2d at 807.

The Court in *Conley* concluded "that a statute possessing this same type of structure—i.e., employing the word 'any' followed by a list of singular nouns to enumerate the prohibited items—is ambiguous as to the allowable unit of prosecution." *Id.* at 217, 839 S.E.2d at 810. Due to the ambiguity, the rule of lenity applied, which " 'forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention.' " *Id.* at 212, 839 S.E.2d at 807 (quoting *State v. Garris*, 191 N.C. App. 276, 284, 663 S.E.2d 340, 347 (2008)). Accordingly, the Court concluded it must "hold that [the] defendant may be convicted of only a single violation" of section 14-269.2 despite the multiple firearms involved. *Id.* at 217, 663 S.E.2d at 810.

In reaching this conclusion, the Court in *Conley* relied upon *State v. Smith*, 323 N.C. 439, 373 S.E.2d 435 (1988). *Conley*, 374 N.C. at 213–17, 839 S.E.2d at 808–10. In *Smith*, the defendant was arrested for selling one obscene film and two obscene magazines. 323 N.C. at 440, 373 S.E.2d at 436. The defendant was convicted of three separate counts of section 14-190.1(a), providing that it was unlawful to "sell, deliver or provide '*any* obscene writing, picture, record or other representation or embodiment of the obscene.'" *Id.* at 440–41, 373 S.E.2d at 436 (quoting N.C. Gen. Stat. § 14-190.1(a)(1) (1986)) (emphasis added). The defendant challenged his multiple convictions by arguing section 14-190.1(a) was ambiguous as to whether a defendant could be convicted of multiple violations when multiple obscene items were sold in a single transaction. *Id.* at 441, 373 S.E.2d at 437. Because section 14-190.1(a) did not differentiate between "offenses based upon the quantity of the obscene items disseminated," the Court explained the statute was ambiguous as to whether our General Assembly intended for a unit of prosecution per "each obscene item" or for a single unit of prosecution to "attach to the unlawful conduct of disseminating obscenity"—regardless of the quantity of obscene materials disseminated. *Id.* at 441, 373 S.E.2d at 436. Given the ambiguity, the Court applied the rule of lenity and concluded the defendant could be convicted only of one count of violating section 14-190.1(a). *Id.* at 444, 373 S.E.2d at 438.

*Conley* also relied upon *Garris*, 191 N.C. App. at 276, 663 S.E.2d at 340. *Conley*, 374 N.C. at 212, 839 S.E.2d at 807. In *Garris*, the defendant was convicted

of two counts of possession of a firearm by a felon under section 14-415.1(a) for possessing two firearms during a single instance. 191 N.C. App. at 279, 663 S.E.2d at 344. Section 14-415.1(a) provided that it was unlawful for any felon to possess "*any firearm* or any weapon of mass death and destruction." *Id.* at 285, 663 S.E.2d at 348 (emphasis in original) (quoting N.C. Gen. Stat. § 14-415.1(a) (2007)). Our Court determined "any firearm" was ambiguous as it could be reasonably construed "as referring to a single firearm or multiple firearms." *Id.* at 283, 663 S.E.2d at 346. As a result, we applied the rule of lenity and concluded the trial court erred by entering two convictions against the defendant for possession of a firearm by a felon. *Id.* at 285, 663 S.E.2d at 348.

Here, Defendant was convicted of two counts of carrying a concealed firearm under section 14-269 for possessing two concealed firearms during a single occasion. Section 14-269 provides that it is "unlawful for any person willfully and intentionally to carry concealed about his or her person *any* pistol or gun" unless the person qualifies for an exception. N.C. Gen. Stat. § 14-269 (a1) (emphasis added). Section 14-269 is similar in structure to the statutes in *Conley*, *Smith*, and *Garris* as they all use "the word 'any' followed by a list of singular nouns to enumerate the prohibited items . . . ." *See Conley*, 374 N.C. at 217, 839 S.E.2d at 810; *Smith*, 374 N.C. at 440–41, 373 S.E.2d at 436; *Garris*, 191 N.C. App. at 285, 663 S.E.2d at 348. As such, section 14-269 is "ambiguous as to the allowable unit of prosecution" and we must apply the rule of lenity to interpret section 14-269 in favor of Defendant. *See Conley*,

374 N.C. at 217, 839 S.E.2d at 810. Accordingly, the trial court erred by entering judgment on both of Defendant's convictions because she "could be convicted of only one count" of section 14-269. *See Smith*, 323 N.C. at 444, 373 S.E.2d at 438; N.C. Gen. Stat. § 14-269.

Notwithstanding the trial court's error in entering both judgments, the error was not prejudicial because the trial court consolidated Defendant's convictions during sentencing. There is no risk of prejudice to Defendant on any hypothetical future convictions because for "purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used." *See* N.C. Gen. Stat. § 15A-1340.14 (2023).

### B. Probationary Period

Next, Defendant argues the trial court erred by sentencing her to twenty-four months of supervised probation without making a specific finding that a longer period of probation was necessary than the eighteen-month statutory maximum. We agree.

The length of a probationary period is governed by section 15A-1343.2(d), which provides:

> Unless the court makes specific findings that longer or shorter periods of probation are necessary, the length of the original period of probation for offenders sentenced under Article 81B shall be as follows:
> (1) For misdemeanants sentenced to community punishment, not less than six nor more than 18 months.

N.C. Gen. Stat. § 15A-1343.2(d)(1) (2023).  In other words, section 15A-1343.2(d)(1) "provides that a defendant who is sentenced to community punishment for a misdemeanor shall be placed on probation for no less than 6 months and no more than 18 months, unless the trial court enters specific findings that longer or shorter periods of probation are necessary." *State v. Sale*, 232 N.C. App. 662, 664, 754 S.E.2d 474, 476 (2014).

Here, Defendant was convicted of two class 2 misdemeanors, had no prior convictions, and was a Level I offender for misdemeanor sentencing purposes.  The trial court indicated it was entering a probationary period of twenty-four months as part of community punishment.  The trial court failed to make a specific finding that a longer term was necessary than the eighteen-month statutory maximum.  Accordingly, we remand for resentencing.  *See id.* at 664, 754 S.E.2d at 476.

**C. Improper Consideration**

Finally, Defendant argues the trial court erred by improperly considering her "acquitted conduct" during sentencing.  In particular, Defendant challenges the trial court's statement during sentencing that it "cannot ignore . . . the amount of money, the guns, the vacuum-sealed item, whatever it was."  We disagree.

During sentencing hearings, the trial court is "permitted wide latitude and the rules of evidence are not strictly enforced." *State v. Smith*, 300 N.C. 71, 81, 265 S.E.2d 164, 171 (1980) (citations omitted).  Section 15A-1340.12 provides:

> The primary purposes of sentencing a person convicted of

a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 (2023). To that end, "[t]his Court has held that in determining the sentence to be imposed, the trial judge may consider such matters as the age, character, education, environment, habits, mentality, propensities and record of the defendant." *State v. Morris*, 60 N.C. App. 750, 754–55, 300 S.E.2d 46, 49 (1983).

But our courts have concluded improper considerations include a defendant's rejection of a plea offer, *State v. Boone,* 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977), a defendant's finances, *State v. Massenburg*, 234 N.C. App. 609, 615, 759 S.E.2d 703, 707–08 (2014), the religion of either a defendant or the judge, *State v. Earls*, 234 N.C. App. 186, 194, 758 S.E.2d 654, 659 (2014), and conduct not alleged in the indictment, *State v. Swinney*, 271 N.C. 130, 133, 155 S.E.2d 545, 548 (1967).

Here, Defendant was charged, in pertinent part, with one count each of keeping and maintaining a vehicle for the keeping and selling of marijuana, possession of marijuana paraphernalia, and felony possession of marijuana. Officers testified, and the indictment alleged, that these charges stemmed from the items seized during the search of Defendant's vehicle. The items included 123 grams of marijuana, approximately $10,480 in cash, and a digital scale. During sentencing, Defendant's

counsel requested a PJC and unsupervised probation, to which the trial court responded: "I hear your request . . . but I cannot ignore the facts of the case. Specifically, the amount of money, the guns, the vacuum-sealed item, whatever it was."

The trial court did not sentence Defendant based on an improper consideration by noting the items seized from Defendant's vehicle. Despite Defendant's acquittal of the charges related to the seizure of those items, the "acquitted conduct" was alleged in the indictment and the evidence presented at trial placed Defendant in the vehicle with the items. Moreover, the trial court's main concern in its statement was not necessarily Defendant's possession of those items, but rather the "appearance" of Defendant's proximity to those items. For example, the trial court admitted that it "question[ed] whether [the] stuff is even [Defendant's] stuff, to be quite honest." The trial court went on to explain that "I don't know if it's the people that you were associated with then. And hopefully you have removed yourself from these people or person, but they're taking you down the wrong path. You have too much going on for you for someone to mess it up for you." While we caution against considering acquitted conduct during sentencing, the record does not reflect the trial court improperly considered acquitted conduct in sentencing Defendant..

**V. Conclusion**

We conclude the trial court erred by entering judgment on Defendant's two convictions for carrying a concealed firearm. Because the trial court consolidated the

two convictions, however, the error was not prejudicial. In addition, the trial court erred by sentencing Defendant to twenty-four months of supervised probation without making a specific finding that a longer period of probation was necessary than the eighteen-month statutory maximum. Lastly, the trial court did not err during sentencing by mentioning the items seized from Defendant's vehicle despite her acquittal from the related charges. Accordingly, we reverse and remand for a new sentencing hearing.

NO PREJUDICIAL ERROR  in part; REVERSED and REMANDED in part.

Judges TYSON and ARROWOOD concur.